JAMES R. WILLIAMS, County Counsel (S.B. #271253)
CHRISTOPHER A. CAPOZZI, Deputy County Counsel (S.B. #271583)
STEPHEN H. SCHMID, Deputy County Counsel (S.B. #78055)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San José, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendant
COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San José Division)

| | |
|---|---|
| MICHEL HERMANGE,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CLARA,<br><br>Defendant. | No. 16-CV-02847 BLF<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      February 21, 2019<br>Time:      9:00 a.m.<br>Crtrm:    3, 5th Floor<br>Judge:    Beth Labson Freeman |

TO PLAINTIFF AND HIS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on **February 21, 2019** at **9:00 a.m.**, or as soon thereafter as the matter may be heard in Courtroom 3, 5th Floor of the above-entitled Court, located at 280 South First Street, San José, California 95113, Defendant County of Santa Clara will and hereby does move this Court for an order granting summary judgment, or in the alternative, summary adjudication.

///

///

///

1    This motion is based on this Notice of Motion and Motion for Summary Judgment, or in the

2  Alternative, Summary Adjudication; the Memorandum of Points and Authorities in Support; the

3  Declaration of Christopher Capozzi; the Declaration of Susana Alcantar; the Declaration of Vickie

4  Gorley; the papers and pleadings on file in this action; and other oral and/or documentary evidence

5  as may be presented at the hearing of this motion.

6

7  Dated:  December 6, 2018                          Respectfully submitted,

8                                                    JAMES R. WILLIAMS
                                                     County Counsel
9

10                                          By:   /s/ Christopher A. Capozzi
                                                  CHRISTOPHER A. CAPOZZI
11                                                Deputy County Counsel

12                                                Attorneys for Defendant
                                                  COUNTY OF SANTA CLARA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

***RAND* NOTICE**

2          Plaintiff MICHEL HERMANGE is hereby provided with notice that this is a motion for

3   summary judgment on the merits.  This notice is being provided pursuant to *Rand v. Rowland*, 154

4   F.3d 952, 962-63 (9th Cir. 1995):

5              NOTICE-WARNING This Notice is Required to be Given to You by
               The Court
6

7              The defendants have made a motion for summary judgment by which
               they seek to have your case dismissed.    A motion for summary
8              judgment under Rule 56 of the Federal Rules of Civil Procedure will,
               if granted, end your case.
9

10             Rule 56 tells you what you must do in order to oppose a motion for
               summary judgment.   Generally, summary judgment must be granted
11             when there is no genuine issue of material fact-that is, if there is no
               real dispute about any fact that would affect the result of your case, the
12             party who asked for summary judgment is entitled to judgment as a
               matter of law, which will end your case.    When a party you are suing
13             makes a motion for summary judgment that is properly supported by
               declarations (or other sworn testimony), you cannot simply rely on
14             what your complaint says.    Instead, you must set out specific facts in
               declarations, depositions, answers to interrogatories, or authenticated
15             documents, as provided in Rule 56(e), that contradict the facts shown
               in the defendant's declarations and documents and show that there is a
16             genuine issue of material fact for trial.    If you do not submit your
               own evidence in opposition, summary judgment, if appropriate, may
17             be entered against you.    If summary judgment is granted, your case
               will be dismissed and there will be no trial.
18

19

20   Dated:  December 6, 2018                    Respectfully submitted,

21                                                JAMES R. WILLIAMS
                                                  COUNTY COUNSEL
22

23                                          By:   _/s/ *Christopher A. Capozzi*_____
                                                  CHRISTOPHER A. CAPOZZI
24                                                Deputy County Counsel

25                                                Attorneys for Defendant
                                                  COUNTY OF SANTA CLARA
26

27

28

Defendant's Notice of Motion and Motion for Summary Judgment,                    Case No. 16-CV-02847 BLF
or in the Alternative, Summary Adjudication; Memo of P's & A's

# <u>TABLE OF CONTENTS</u>

Page

I. INTRODUCTION ........................................................................................................1

II. FACTUAL BACKGROUND ....................................................................................1

    A.    Plaintiff Applied for County Probation Department Position and was Hired .........1

    B.    Plaintiff's Duties and Training.................................................................................2

    C.    Plaintiff Failed to Follow Instructions in Creating the May 2010 Monthly Odometer  Report ........................................................................................................2

    D.    Plaintiff Repeatedly Refused Ms. Alcantar's Requests That he Take Notes...........3

    E.    Plaintiff Made Unprofessional Comments to Ms. Alcantar While Moving Boxes........................................................................................................................4

    F.    Plaintiff Became Angry and Acted in a Threatening Manner During a Review of his July Monthly Odometer Reading......................................................................4

    G.    Plaintiff Failed to Review the Probation Department's Annual Report .................5

    H.    Plaintiff Failed to Create a Fleet User Report on Time ..........................................5

    I.    Although Plaintiff Represented That he had Computer Skills During his Interview, he was Unable to use Computer Programs Required for the Position, Even After Receiving Training..................................................................6

    J.    September 2010 Performance Counseling by Ms. Alcantar ...................................6

    K.    Plaintiff Failed to Submit a Timely and Correctly Formatted September 2010 Odometer Report.....................................................................................................7

    L.    Plaintiff Reformatted the Department Master Vehicle Log Despite Having Been  Instructed not to Change the Format ............................................................7

    M.    Plaintiff Failed to Complete the September and October 2010 Fleet Inventory Reports on Time.......................................................................................................7

    N.    Ms. Alcantar's Unit Hires Extra-Help Personnel Because Plaintiff was Unable to  Complete Assignments .......................................................................................8

    O.    Ms. Alcantar's Efforts to Retrain Plaintiff.............................................................8

    P.    Ms. Gorley and Ms. Alcantar Held Biweekly Performance Counseling Sessions with  Plaintiff................................................................................................8

    Q.    Plaintiff Was Released From his Probation Department Position and Returned to His  Former Classification ...................................................................................9

    R.    Plaintiff Filed a Complaint with the Equal Employment Opportunity Commission, and Then Filed the Instant Case.........................................................9

III. ARGUMENT ........................................................................................................9

    A.     Standard on Summary Judgment ...........................................................9

    B.     Plaintiff's Discrimination Claim Fails .................................................10

          1.     The *McDonnell Douglas* Burden-Shifting Framework .............10

          2.     Plaintiff Cannot Meet his Burden of Establishing a *Prima Facie* Case Because he has no Evidence of Adequate Performance ............10

          3.     The County had Legitimate, Non-Discriminatory Reasons for Releasing Plaintiff.....................................................................11

          4.     Plaintiff Cannot Establish That the County's Stated Reasons for his Release were a Pretext for Discrimination.................................17

IV. CONCLUSION..................................................................................................18

1

## **TABLE OF AUTHORITIES**

2

3  **Cases**

4  *Aragon v. Republic Silver State Disposal Inc.*,

5      292 F.3d 654, 664 (9th Cir. 2002) ................................................................. 17

6  *Bradley v. Harcourt, Brace & Co.*,

7      104 F.3d 267, 270 (9th Cir. 1996) ................................................................. 11

8  *In re Oracle Corp. Securities Litigation*,

9      627 F.3d 376, 387 (9th Cir. 2010) ................................................................. 10

10  *Jamal v. Wilshire Mgmt. Leasing Corp.*,

11      320 F. Supp. 2d 1060 ................................................................................... 17

12  *Lindblom v. Secretary of the Army*,

13      No. 2:06-CV-2280, 2008 WL 640637, at *3-4 ............................................. 17

14  *Lyons v. England*,

15      307 F.3d 1092, 1113 (9th Cir. 2002) ........................................................... 11

16  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

17      475 U.S. 574, 586 (1986) ............................................................................. 10

18  *McDonnell Douglas Corporation v. Green*,

19      411 U.S. 792, 802 (1973) ................................................................. 10, 11, 12

20  *Nelson v. Quality Food Centers, Inc.*,

21      368 F. App'x 817, 819 (9th Cir. 2010) ....................................................... 11

22  *Sischo–Nownejad v. Merced Cmty. Coll. Dist.*,

23      934 F.2d 1104, 1111 (9th Cir.1991) ............................................................ 10

24  *St. Mary's Honor Ctr. v. Hicks*,

25      509 U.S. 502, 506-07 (1993) .................................................................. 11, 12

26  *Steckl v. Motorola, Inc.*,

27      703 F.2d 392, 393 (9th Cir.1983) ................................................................ 17

28

Defendant's Notice of Motion and Motion for Summary Judgment      Case No. 16-CV-02847 BLF
or in the Alternative Summary Adjudication; Memo of P's & A's

*Texas Dep't of Cmty. Affairs v. Burdine,*

   450 U.S. 248, 253 (1981) ......................................................................................... 10, 12

*Thomas v. Ponder,*

   611 F.3d 1144, 1150 (9th Cir. 2010) ............................................................................. 9

*Vasquez v. Cty. of Los Angeles,*

   349 F.3d 634, 641 (9th Cir. 2003) ............................................................................... 10

*Villiarimo v. Aloha Island Air, Inc.,*

   281 F.3d 1054, 1061 (9th Cir. 2002) ........................................................................... 10

*Wallis v. J.R. Simplot Co.,*

   26 F.3d 885, 889 (9th Cir.1994) .................................................................................. 11

**Statutes**

42 U.S.C. § 2000e ............................................................................................................ 1, 9

**Other Authorities**

Santa Clara County, Cal. Ordinance Code § A25-191 ....................................................... 2

**Rules**

Fed. R. Civ. P. 56(c) ..................................................................................................... 9, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Plaintiff Michel Hermange, who has worked for the County of Santa Clara since 2006, was released from his probationary position as a Facilities Maintenance Representative (FMR) in the County Probation Department because he failed to satisfactorily perform assigned tasks; resisted training and instruction from his supervisor, Susana Alcantar; and at times was abrasive with Ms. Alcantar during his probationary term.  After Plaintiff's probationary release from the FMR position, he returned to his prior position as a General Maintenance Mechanic in the County Facilities and Fleet Department, where he continues to work.

Plaintiff brings one claim for race discrimination pursuant to 42 U.S.C. § 2000e-2 ("Title VII").  Plaintiff alleges that his probationary release was based upon racial discrimination.  Specifically, Plaintiff alleges that Ms. Alcantar, who is Hispanic, released him from probation because he is white.

The County is entitled to summary judgment because Plaintiff cannot establish a *prima facie* case.  Plaintiff was not performing adequately and was therefore released from his probationary position due to his poor performance, and not based upon his race.  Plaintiff has presented no evidence that he was treated less favorably than similarly-situated individuals outside his protected class.  Even if Plaintiff could establish a *prima facie* case, the County has identified legitimate, non-discriminatory reasons for Plaintiff's release from probation.  Finally, Plaintiff cannot establish that the County's stated reasons for his probationary release are a pretext for race discrimination.  Accordingly, the County is entitled to summary judgment.

## II.      FACTUAL BACKGROUND

### A.      Plaintiff Applied for County Probation Department Position and was Hired

Plaintiff was employed by the County as a General Maintenance Mechanic beginning in August 2006.  Declaration of Christopher Capozzi ("Capozzi Decl."), Ex. A (Deposition of Plaintiff Michel Hermange), dep Ex. 5.  He applied for a promotion to a position as an FMR in the Probation Department in April 2010.  *Id*.  On May 17, 2010, he was promoted and assumed the FMR role.  Capozzi Decl., Ex. A, dep Ex. 7.  Due to his promotion and transfer to a new position in a different

1

Defendant's Notice of Motion and Motion for Summary Judgment          Case No. 16-CV-02847 BLF
or in the Alternative Summary Adjudication; Memo of P's & A's

1  department, Plaintiff was required to complete a six-month probationary term.  Capozzi Decl., Ex.

2  A, 70:24-71:6; Santa Clara County, Cal. Ordinance Code § A25-191.  Failure to successfully

3  perform during this six-month probationary period would result in his release from the new position,

4  demotion to his prior grade, and return to his previous position within the County.  Capozzi Decl.,

5  Ex. A, dep Ex. 7.

6  **B.    Plaintiff's Duties and Training**

7         The Probation Department has a fleet of over 150 vehicles and serves 49 units, or vehicle

8  users, transporting probation officers, clients, youth offenders, and arrestees within and outside the

9  County.  *Id.*  Plaintiff's role was important in ensuring these vehicles were well maintained and

10 regularly serviced to avoid break downs, and that vehicles were properly equipped so that probation

11 officers would have the right tools and equipment in the event of an accident or break down.

12 Declaration of Susana Alcantar ("Alcantar Decl.") at ¶ 4.

13        On Plaintiff's first day, Ms. Alcantar met with him and explained his assigned duties, and

14 trained him in those assigned duties almost daily.  *Id.* at ¶¶ 4-5.  Plaintiff's duties included

15 scheduling and coordinating with different units within the Probation Department to monitor vehicle

16 usage and required maintenance; maintaining an inventory of vehicle items such as gas cards, garage

17 passes, first-aid kits, spare tires, etc.; maintaining mileage records and reporting mileage to the

18 Facilities and Fleet Department; reserving vehicles for department use; processing service orders for

19 vehicles and facilities; assisting with health and fire inspections; and maintaining the Probation

20 Department buildings and facilities.  Alcantar Decl. at ¶ 4.

21        Ms. Alcantar took a vested interest in Plaintiff's success and attempted to train him in his

22 assigned duties almost daily.  Alcantar Decl. at ¶ 5.  Unfortunately, Plaintiff was not able to

23 accomplish tasks in a timely or satisfactory manner, he was routinely resistant to training, and at

24 times, abrasive with Ms. Alcantar.  Capozzi Decl., Ex. A, dep Ex. 7.

25 **C.    Plaintiff Failed to Follow Instructions in Creating the May 2010 Monthly Odometer
26         Report**

27        Shortly after Plaintiff began working in the department, Ms. Alcantar trained him to calculate

28 vehicle mileage for the department's fleet and provide her with a copy of what was referred to as the

1    "monthly odometer report."  *Id*.  She had explicitly instructed Plaintiff to perform the calculations

2    manually, in part to make sure he understood the process, and could perform the math necessary for

3    this and other tasks.  *Id*.  She also wanted him to be able to check his work, because an erroneous

4    report could have a negative impact on the department's budget.  *Id*., Alcantar Decl. at ¶ 8.

5          Plaintiff did not follow Ms. Alcantar's instructions.  Alcantar Decl. at ¶ 8; Declaration of

6    Vickie Gorley ("Gorley Decl.") at ¶¶ 5-6.  Instead of manually creating the report and forwarding a

7    copy to Ms. Alcantar as instructed, Plaintiff entered the information directly into the computer.

8    Capozzi Decl., Ex. A, dep Ex. 7.  When Ms. Alcantar asked for his written copy of the monthly

9    report, Plaintiff asked her why she could not just print a copy herself from her computer.  *Id*.  When

10   Ms. Alcantar learned that Plaintiff did not generate a manual report, but instead entered the

11   information directly into the fleet system, she told Plaintiff that he had failed to follow her

12   instructions and she was unable to evaluate his work.  *Id*.  Plaintiff became upset, and replied that his

13   way was faster, and then just walked away.  *Id*.

14   **D.    Plaintiff Repeatedly Refused Ms. Alcantar's Requests That he Take Notes**

15         Plaintiff was routinely resistant to Ms. Alcantar's requests that he take notes while she was

16   training him.  *Id*., Alcantar Decl. at ¶ 7.  Plaintiff needed constant reminders from Ms. Alcantar

17   about note-taking as well as repeated explanations from Ms. Alcantar regarding why it was

18   necessary to take notes.  Capozzi Decl., Ex. A, dep Ex. 7; Alcantar Decl. at ¶ 7.  Ms. Alcantar would

19   train Plaintiff by demonstrating a task step-by-step.  Alcantar Decl. at ¶ 5, Gorley Decl. at ¶¶ 5.  She

20   would create a document or fill out a report while the Plaintiff observed.  Alcantar Decl. at ¶ 5.  She

21   would ask Plaintiff to take notes, and he would often resist or simply fail to put any effort into note

22   taking.  *Id. at* ¶7; Capozzi Decl., Ex. A, dep Ex. 7.  His lack of notes meant that when Plaintiff was

23   performing a task on his own, he would not have any notes to which he could refer, and his resulting

24   work product was usually incomplete or incorrect.  Capozzi Decl., Ex. A, dep Ex. 7.  At one point

25   during his training, Plaintiff reflected his attitude toward note taking when he asked Ms. Alcantar,

26   "What is it you are looking for in the notes?  It really does not mean anything."  *Id*.

27         Ms. Alcantar also emphasized that aside from training, Plaintiff also needed to take notes as

28   part of his routine duties.  Alcantar Decl. ¶¶ 7, 9.  For instance, in May 2010, Plaintiff accompanied

3

Defendant's Notice of Motion and Motion for Summary Judgment                        Case No. 16-CV-02847 BLF
or in the Alternative Summary Adjudication; Memo of P's & A's

1    a team conducting an annual health and fire safety inspection of the Probation Department.  *Id*. at ¶

2    7.  Ms. Alcantar also accompanied the team and told Plaintiff to take notes on the deficiencies that

3    the fire marshal was pointing out.  *Id*.  Plaintiff asked her why he needed to take notes.  Capozzi

4    Decl., Ex. A, dep Ex. 7.  Ms. Alcantar explained that she wanted him to take notes so that he could

5    start working right away on any deficiencies that the team identified.  *Id*.  Plaintiff resisted, saying

6    that the fire marshal would give the department a report after the inspection, and they could just use

7    that report.  *Id*.  After Ms. Alcantar insisted that Plaintiff take notes, he complied, but he told her that

8    he thought it was a waste of time.  *Id*.

9    **E.     Plaintiff Made Unprofessional Comments to Ms. Alcantar While Moving Boxes**

10          In May 2010, shortly after starting his new job, Plaintiff helped Ms. Alcantar move some

11   heavy boxes.  Capozzi Decl., Ex. A, dep Ex. 7; Alcantar Decl. at ¶ 15.  When Plaintiff used a poor

12   lifting technique, Ms. Alcantar said, "Mike, watch your back," so that the Plaintiff would not injure

13   himself.  Capozzi Decl., Ex. A, dep Ex. 7; Alcantar Decl. at ¶ 15.  Plaintiff reacted in an abrupt and

14   abrasive manner, and told Ms. Alcantar, "You better be careful with what you say, someone got in

15   trouble [for] saying that." *Id.*; Capozzi Decl., Ex. A, dep Ex. 7.  Ms. Alcantar was startled by

16   Plaintiff's reaction.  Alcantar Decl. at ¶ 15.  Ms. Alcantar felt that Plaintiff's comments were

17   inappropriate given the circumstances.  *Id*.

18   **F.     Plaintiff Became Angry and Acted in a Threatening Manner During a Review of his
             July Monthly Odometer Reading**
19

20          In July 2010, Ms. Alcantar met with Plaintiff to discuss his work performance, and

21   specifically his work on a recent monthly odometer report.  Capozzi Decl., Ex. A, dep Ex. 7;

22   Alcantar Decl. at ¶ 13.  Plaintiff had inaccurately reported mileage for several vehicles.  Capozzi

23   Decl., Ex. A, dep Ex. 7.  After Ms. Alcantar reviewed his work with him and told him that it was not

24   done accurately, Plaintiff became angry, stood up, leaned toward her, and yelled at her.  *Id*.  Plaintiff

25   complained that Ms. Alcantar was giving him too much work, that she "talked down" to him, that he

26   was not being treated with respect, that he was being hazed and bullied, and that he felt intimidated

27   by her.  *Id*.  Ms. Alcantar immediately felt threatened by the Plaintiff.  Alcantar Decl. at ¶ 13.  Ms.

28   Alcantar left the room to see if she could find her supervisor, Ms. Gorley.  *Id*.  Unable to find Ms.

1   Gorley, Ms. Alcantar returned to the room to see if Plaintiff had calmed down.  *Id.;* Capozzi Decl.,

2   Ex. A, dep Ex. 7.  When she reengaged Plaintiff, she told him that she was not hazing him, but

3   instead was trying to train him to do his work correctly.  Capozzi Decl., Ex. A, dep Ex. 7.  She also

4   informed him of his right to file a complaint if he felt he was being treated unfairly.  *Id.*, Alcantar

5   Decl. at ¶ 13.  Ms. Alcantar never felt safe meeting alone with the Plaintiff after that encounter.

6   Alcantar Decl. at ¶ 15.

7   **G.    Plaintiff Failed to Review the Probation Department's Annual Report**

8           On June 3, 2010, Ms. Alcantar gave Plaintiff a copy of the Probation Department's Annual

9   Report, and instructed him to learn the types of vehicles required by each unit within the department.

10  Capozzi Decl., Ex. A, dep Ex. 7.  This review was supposed to help Plaintiff understand the needs of

11  each unit, and allow him to conduct a major vehicle rotation at the end of October.  *Id.*  Ms. Alcantar

12  followed up with Plaintiff and it was clear to her that he did not look at the report because Plaintiff

13  could not answer her questions about the content of the report.  *Id.*  He was given an extension until

14  June 18, 2010, to read and return the report, and he again failed to read the report and return it to Ms.

15  Alcantar by that deadline.  *Id.*  On June 23, 2018, Ms. Alcantar asked Plaintiff to return his copy of

16  the report.  *Id.*  When he returned it to her, she asked him if he read the report and he answered, "I

17  glanced at it."  *Id.*

18  **H.    Plaintiff Failed to Create a Fleet User Report on Time**

19          On August 20, 2010, Ms. Alcantar instructed Plaintiff to contact each of the department's

20  supervisors and fleet user contacts, who were responsible for vehicles assigned to their units, to

21  determine their vehicle needs, and submit a report to her.  *Id.*  This report was critical to the

22  department's upcoming vehicle rotation scheduled for October 25, 2010.  *Id.*  The task required the

23  Plaintiff to contact 49 supervisors and fleet users.  *Id.*  Plaintiff missed his September 13, 2010

24  deadline to complete the report and Ms. Alcantar extended the deadline to September 20, 2010.  *Id.*

25  Plaintiff failed to submit the report on September 20, 2010, and Ms. Alcantar asked Plaintiff for the

26  report on September 23, 2010.  *Id.*  Plaintiff informed her that he had just started to contact the fleet

27  users that day.  *Id.*  Ms. Alcantar gave him one more extension to October 1, 2010, but explained that

28  the information was needed immediately because of the upcoming vehicle rotation.  *Id.*  Plaintiff

1  failed to complete the interviews and submit his report by the October 1, 2010 deadline.  *Id*.

2  Plaintiff turned in an incomplete report on October 4, 2010, having only interviewed and obtained

3  information from 23 of the 49 vehicle users.  *Id*.  Ms. Alcantar had to assign the task to someone else

4  in the department so that the report could be completed in time for the scheduled vehicle rotation.

5  Alcantar Decl. at ¶ 12.

6  **I.**    **Although Plaintiff Represented That he had Computer Skills During his Interview, he**
        **was Unable to use Computer Programs Required for the Position, Even After Receiving**

7        **Training**

8        At his initial job interview, Plaintiff stated that he knew computer programs very well.

9  Capozzi Decl., Ex. A, dep Ex. 7; Gorley Decl. at ¶ 7.  Plaintiff claimed that he had worked with

10  Microsoft programs, including Microsoft Excel.  Gorley Decl. at ¶ 7.  He said that his wife had a

11  private business and he worked on her computer on Microsoft Excel spreadsheets.  *Id*.  During the

12  hiring process the Probation Department made it clear to Plaintiff that the position would require

13  mostly clerical work, including computer work, despite the fact that it was labeled a "maintenance"

14  position.  *Id*.  After Plaintiff began working at the department, it became clear that he did not possess

15  the computer skills that he represented in his interview.  *Id*.  He could not independently create

16  documents that were correctly formatted.  *Id*.  Ms. Alcantar arranged for the department to send

17  Plaintiff to a Microsoft Excel class.  *Id*.  Plaintiff attended the class, however, his work with

18  computer programs did not improve.  *Id*.

19  **J.**    **September 2010 Performance Counseling by Ms. Alcantar**

20        On September 13, 2010, Ms. Alcantar counseled Plaintiff regarding his performance and

21  explained that his job performance had to improve significantly in several areas before his

22  probationary period ended on November 15, 2010.  Capozzi Decl., Ex. A, dep Ex. 7.  Ms. Alcantar

23  detailed that Plaintiff had to place work orders electronically, conduct tasks with limited supervision,

24  research questions before giving answers, take initiative to walk through the building routinely and

25  spot deficiencies, complete outstanding assignments in a timely manner, be assertive and

26  professional in carrying out duties, complete vehicle rotation assignments, and follow instructions

27  and directives.  *Id*.  This counseling provided Plaintiff with over 60 days to focus on improving his

28  performance before his probationary period ended.

6

Defendant's Notice of Motion and Motion for Summary Judgment          Case No. 16-CV-02847 BLF
or in the Alternative Summary Adjudication; Memo of P's & A's

1

**K.      Plaintiff Failed to Submit a Timely and Correctly Formatted September 2010
         Odometer Report**

2

3       In September 2010, Ms. Alcantar sent Plaintiff an e-mail instructing him to assemble a

4   mileage report from information in the department database, and list vehicles according to their

5   mileage, from highest to lowest.  *Id*.  Plaintiff requested that Ms. Alcantar show him how to create

6   the report, and she did so.  *Id*.  He turned in a report on September 21, 2010, that was incorrect, and

7   Ms. Alcantar again showed him how to create the report.  *Id*.  Plaintiff turned in two more copies of

8   the report the same day, but both were inaccurate.  *Id*.  Ms. Alcantar showed Plaintiff again how to

9   create the report and gave him a deadline of October 4, 2010.  *Id*.  Plaintiff then requested an

10  extension to October 7, 2010, but did not turn in the completed report until October 8, 2010.  *Id*.

11  **L.      Plaintiff Reformatted the Department Master Vehicle Log Despite Having Been
         Instructed not to Change the Format**

12

13      In October 2010, Ms. Alcantar called Plaintiff into her office to ask him why he had changed

14  the format of the department's Master Vehicle Log.  *Id*.  Ms. Alcantar had specifically instructed the

15  Plaintiff not to change the report format.  *Id*.  Plaintiff first responded that he did not change the

16  report format.  *Id*.  Then he admitted that he "changed it a little bit."  *Id*.  Plaintiff had moved the

17  history portion of the report, and reordered the units, making the report difficult to read and use.

18  Alcantar Decl. at ¶ 6.  The report contained the entire history of annual mileage, maintenance, and

19  other data for each individual vehicle.  *Id.*  In its original format it allowed the department to

20  evaluate each vehicle and identify use and maintenance trends with different types of vehicles, as

21  well as user trends.  *Id.*  The original format was also the format with which managers and

22  supervisors were familiar, and it was not appropriate to change the format without notifying them.

23  *Id*.

24  **M.      Plaintiff Failed to Complete the September and October 2010 Fleet Inventory Reports
         on Time**

25

26      Plaintiff failed to submit both the September and October Fleet Inventory Reports on time.

27  Alcantar Decl. at ¶ 11.  These reports were due the last week of each month.  *Id.*  Plaintiff submitted

28  each report a week late, and only after Ms. Alcantar told him that he missed the deadline.  *Id.*

7

Defendant's Notice of Motion and Motion for Summary Judgment                    Case No. 16-CV-02847 BLF
or in the Alternative Summary Adjudication; Memo of P's & A's

**N.      Ms. Alcantar's Unit Hires Extra-Help Personnel Because Plaintiff was Unable to Complete Assignments**

Ms. Alcantar's unit fell behind in accomplishing assigned tasks because Plaintiff was unable to complete his assignments.  Alcantar Decl. at ¶ 14.  As Ms. Alcantar focused more and more on the Plaintiff's work, she had less time to complete her other duties.  *Id*.  She also reduced Plaintiff's assignments so that he could focus on just a few areas, creating more work for her and other employees.  *Id*.  As a result, her unit within the Probation Department had to hire two "extra-help" temporary personnel to assist the unit with routine duties.  *Id*.  This was unprecedented within her unit.  *Id*.  The last three people that held Plaintiff's position did not need their workloads reduced, and there was never a need to hire extra-help personnel to accomplish the unit's routine duties.  *Id*.

**O.      Ms. Alcantar's Efforts to Retrain Plaintiff**

Not long after he began working in the department, it became clear to Ms. Alcantar that Plaintiff needed retraining in several areas due to his failure to submit satisfactory work.  Alcantar Decl. at ¶ 8.  Ms. Alcantar consistently held retraining sessions during the entirety of Plaintiff's employ within the department.  Capozzi Decl., Ex. A, dep Ex. 7.  When she found Plaintiff's work deficient, she trained him in the task again, demonstrated the proper steps, and provided him with an example of what the end product was supposed to look like.  Alcantar Decl. at ¶ 5.  Ms. Alcantar retrained Plaintiff on how to create mileage reports, record mileage logs, file and print odometer reports, handle service calls, review the facilities, and conduct site walk-through inspections.  Capozzi Decl., Ex. A, dep Ex. 7.  This was all part of a recurring effort by Ms. Alcantar to help Plaintiff to meet the minimum requirements of his job.  *Id*.

**P.      Ms. Gorley and Ms. Alcantar Held Biweekly Performance Counseling Sessions with Plaintiff**

Despite intensive efforts by Ms. Alcantar and Ms. Gorley, Plaintiff repeatedly failed to perform his job satisfactorily.  Alcantar Decl. at ¶¶ 5-8; Gorley Decl. at ¶¶ 8-11.  He failed to file reports, frequently missed deadlines, and made errors due to his unwillingness to follow established procedures on which he was trained.  Alcantar Decl. at ¶¶ 6-10.  Beginning in September, as his performance failed to improve, both Ms. Alcantar and Ms. Gorley met with him in biweekly

8

Defendant's Notice of Motion and Motion for Summary Judgment                    Case No. 16-CV-02847 BLF
or in the Alternative Summary Adjudication; Memo of P's & A's

1    performance counseling sessions where they set out training plans and goals to help Plaintiff achieve

2    better results.  Gorley Decl. at ¶ 8.  Despite these efforts, Plaintiff continued to fail to accomplish

3    assigned tasks.  *Id.*  He also continued to be abrasive and uncooperative, particularly with Ms.

4    Alcantar.  *Id.*

5    **Q.    Plaintiff Was Released From his Probation Department Position and Returned to His**
     **       Former Classification**

6

7           On November 2, 2010, the Probation Department notified Plaintiff of his release via a letter,

8    citing inefficiency, incompetence, and negligence in his performance; as well as insubordination.[1]

9    Capozzi Decl., Ex. A, dep Ex 7.  In April 2011, the County Personnel Board held a hearing, and

10   found sufficient facts to uphold Plaintiff's release based upon inefficiency, incompetence, or

11   negligence in his duty performance.  Capozzi Decl., Ex A, dep Ex. 9.

12   **R.    Plaintiff Filed a Complaint with the Equal Employment Opportunity Commission, and**
     **       Then Filed the Instant Case**

13

14          On July 26, 2011, Plaintiff filed a Charge of Discrimination with EEOC and received a

15   Dismissal and Notice of Rights, or "Right to Sue" notice on February 26, 2016.  Capozzi Decl., Ex.

16   A, dep Ex. 2 and 3.  Plaintiff filed the instant case on May 26, 2016, asserting one claim under

17   42 U.S.C. § 2000e—that his release from probation was the result of racial discrimination.  Capozzi

18   Decl., Ex. A, at 17:19-18:2; dep Ex. 4.  Specifically, Plaintiff alleges that Ms. Alcantar, who is

19   Hispanic, maltreated him and released him because he is white.  Capozzi Decl., Ex. A, dep Ex. 4.

20                                  **III.     ARGUMENT**

21   **A.    Standard on Summary Judgment**

22          A court should grant summary judgment when the record reveals no genuine dispute as to

23   any material fact.  Fed. R. Civ. P. 56(c).  A dispute is "genuine" only where sufficient evidence

24   exists for a reasonable jury to find for the non-moving party, *Thomas v. Ponder*, 611 F.3d 1144,

25   1150 (9th Cir. 2010), and a fact is "material" only if it "might affect the outcome of the suit,"

26

27   _____

28   [1] Manager Carolyn Joe signed the letter for Ms. Gorley, who had authored and approved the letter,
     but was on leave when the letter needed to be signed.  Capozzi Decl., Ex. A, at 52:16-54:13; Gorley
     at ¶ 11.

9

Defendant's Notice of Motion and Motion for Summary Judgment                    Case No. 16-CV-02847 BLF
or in the Alternative Summary Adjudication; Memo of P's & A's

1    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When a defendant does not bear the

2    burden of proof, Rule 56 requires only that defendant establish the absence of evidence supporting

3    the plaintiff's case.  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010).  The

4    plaintiff must then present specific evidence—not "metaphysical doubt[s]"—that would allow a

5    reasonable jury to find in his favor.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

6    U.S. 574, 586 (1986).  Although courts draw inferences in favor of the non-moving party,

7    "uncorroborated and self-serving" testimony cannot create a genuine dispute.  *Villiarimo v. Aloha*

8    *Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002).

9            Here, Plaintiff, invoking Title VII, asserts a claim of discrimination based upon race.

10   Plaintiff's claim fails on the merits.

11   **B.    Plaintiff's Discrimination Claim Fails**

12           1.    The *McDonnell Douglas* Burden-Shifting Framework

13           In Title VII discrimination claims, the three-stage *McDonnell Douglas* test applies where a

14   plaintiff produces no direct evidence of discrimination at summary judgment.  *McDonnell Douglas*

15   *Corporation v. Green*, 411 U.S. 792, 802 (1973).  Under that test, a plaintiff must first establish a

16   *prima facie* case by demonstrating that he: (i) belongs to a protected class; (ii) performed adequately;

17   (iii) suffered an adverse employment action; and (iv) was treated less favorably than similarly-

18   situated individuals outside his protected class.  *Id*.  The defendant must then identify "legitimate,

19   non-discriminatory reason[s]" for the challenged actions.  *Vasquez v. Cty. of Los Angeles*, 349 F.3d

20   634, 641 (9th Cir. 2003).  Finally, the burden reverts to the plaintiff to show—with "specific and

21   substantial evidence"—that the employer's justification is "a pretext for discrimination."  *Id*. at 640-

22   642.

23           2.    Plaintiff Cannot Meet his Burden of Establishing a *Prima Facie* Case Because he has
                   no Evidence of Adequate Performance

24

25           To make out a *prima facie* case, a plaintiff must produce some evidence giving rise to an

26   inference of discrimination.  *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).  The

27   amount of evidence required at summary judgment is "very little," *Sischo–Nownejad v. Merced*

28   *Cmty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir.1991), and does not rise to the level of a

10

Defendant's Notice of Motion and Motion for Summary Judgment                    Case No. 16-CV-02847 BLF
or in the Alternative Summary Adjudication; Memo of P's & A's

1  preponderance of the evidence, *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994).

2  However, a plaintiff's failure to offer any evidence establishing a necessary element of his *prima*

3  *facie* case is ordinarily fatal to his claim.  *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002).

4        Here, Plaintiff fails to establish a *prima facie* case.  Although Plaintiff can establish his

5  membership in a protected class, he does not provide any evidence that indicates he was performing

6  adequately in his position at the Probation Department.  Moreover, the County presents ample

7  evidence of Plaintiff's inadequate and unsatisfactory performance.  *See Nelson v. Quality Food*

8  *Centers, Inc.*, 368 F. App'x 817, 819 (9th Cir. 2010) (plaintiff failed to establish a *prima facie* case

9  where he failed to offer evidence of satisfactory performance, and defendant provided contrary

10  evidence of substandard performance).  Plaintiff failed to submit accurate and properly formatted

11  reports, and he repeatedly missed deadlines.  Alcantar Decl. at ¶¶ 6-10, Gorley Decl. at ¶¶ 5-6.

12  Compounding his poor performance was his consistent abrasiveness and uncooperative nature with

13  his supervisors, especially when they were trying to train him to overcome performance deficiencies.

14  Alcantar Decl. at ¶¶ 7-10, Gorley Decl. at ¶ 6.  Plaintiff's poor performance, coupled with a clear

15  unwillingness to learn, led to his eventual release from his position.  His supervisors certainly did not

16  discriminate against him.  Alcantar Decl. at ¶¶ 16-17, Gorley Decl. at ¶ 10-11.

17        Finally, under the *McDonnel Douglas* framework, Plaintiff fails to provide evidence to

18  satisfy the final element of establishing a *prima facie* case—that he was treated less favorably than

19  similarly-situated individuals outside his protected class.  Without this evidence, Plaintiff has failed

20  to make a prima facie case of race discrimination.  The County is entitled to summary judgment on

21  this basis alone.

22        3.        The County had Legitimate, Non-Discriminatory Reasons for Releasing Plaintiff

23        Even if Plaintiff could establish a *prima facie* case, the County had legitimate,

24  nondiscriminatory reasons for Plaintiff's release from probation and return to his former job.  *St.*

25  *Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) (to rebut a *prima facie* case, defendant

26  must produce an explanation for its actions, that is, it must show that the employment action was

27  taken for a legitimate, nondiscriminatory reason); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267,

28  270 (9th Cir. 1996) (employee's inadequate work performance and improper behavior are legitimate,

1   nondiscriminatory reasons for discharge).  Once the employer meets its burden of articulating a

2   legitimate reason for discharge, the presumption of unlawful discrimination is rebutted.  *Id.* citing *St.*

3   *Mary's Honor Ctr. v. Hicks*, 509 U.S. at 511.  Although the *McDonnell Douglas* presumption shifts

4   the burden of *production* to the defendant, "[t]he ultimate burden of persuading the trier of fact that

5   the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

6   *Burdine*, 450 U.S. at 253.

7        Here, Plaintiff's failure to adequately perform assigned duties and his abrasive and

8   uncooperative attitude with supervisors are the legitimate reasons for Plaintiff's release.  The

9   evidence reflects numerous instances of Plaintiff's inability to perform the duties required of his

10  position, his difficulty following instructions from his supervisor, and his resistance to his

11  supervisor's efforts to train him.  In terms of his work product, Plaintiff repeatedly submitted work

12  that was incorrect, incomplete, or late.  Capozzi Decl., Ex. A, dep Ex. 7; Alcantar Decl. at ¶¶ 6-12;

13  Gorley Decl. at ¶ 5.

14       Plaintiff routinely missed deadlines, and during his entire six-month tenure there was only

15  one occasion when he notified Ms. Alcantar that he needed an extension *before* missing his deadline.

16  Alcantar Decl. at ¶ 11.  Plaintiff submitted odometer reports for May, July, and September that were

17  inaccurate and incomplete.  Capozzi Decl., Ex. A, dep Ex 7.  Plaintiff submitted the September

18  odometer report late, after missing two extended deadlines.  *Id*.  He also missed the deadline for

19  filing the September and October 2010 fleet inventory reports that were his responsibility to draft

20  and submit.  Alcantar Decl. at ¶ 11.  He filed both reports a week late, and he only submitted them

21  after Ms. Alcantar reminded him that he missed the deadline.  *Id*.

22       Plaintiff's missed deadlines demonstrated a lack of interest in following instructions, and a

23  lack of respect for department protocol.  As part of Plaintiff's training, Ms. Alcantar provided

24  Plaintiff with reference guides and reports to review to help familiarize him with the department, but

25  Plaintiff showed little interest in reviewing these materials.  Alcantar Decl. at ¶ 5.  In one instance,

26  he had to be reminded to review the unit vehicle assignments in the Probation Department's Annual

27  Report.  Capozzi Decl., Ex. A, dep Ex. 7.  Ms. Alcantar instructed him to review the report and

28  become familiar with the different types of vehicles assigned to the department.  *Id*.  When Plaintiff

1   missed the deadline to return the report, Ms. Alcantar reminded him about it and asked him some

2   questions related to its content.  *Id*.  It was clear from Plaintiff's answers that he had not even looked

3   at the report.  *Id*.  Ms. Alcantar gave him an extension until June 18, 2010, to read the report, and he

4   failed to meet that deadline.  On June 23, 2018, Ms. Alcantar told Plaintiff to return the report, and

5   she asked him if he read it.  *Id*.  Plaintiff answered that he "glanced at it."  *Id*.

6          Plaintiff also failed to demonstrate basic responsibility and complete assignments.  Perhaps

7   the most glaring example is his failure to create a fleet vehicle user report.  Capozzi Decl., Ex. A,

8   dep Ex. 7.  In August 2010, Ms. Alcantar instructed Plaintiff to contact the department's 49 units and

9   create a report detailing their upcoming vehicle needs.  *Id*.  Ms. Alcantar gave him a deadline of

10  September 13, 2010.  This was a particularly critical report for the department, because the needs

11  identified would be the basis for the department's major vehicle rotation scheduled for October 25,

12  2010.  *Id*.  Plaintiff missed three extended deadlines and eventually turned in an incomplete report on

13  October 4, 2018, having only interviewed 23 of the 49 fleet vehicle users.  *Id*.  Ms. Alcantar had to

14  assign another person to contact the remaining 26 units and complete the report.  Alcantar Decl. at ¶

15  12.

16         Plaintiff also failed to follow simple instructions.  *Id*. at ¶¶ 5-7; Gorley Decl. at ¶ 5.  Ms.

17  Alcantar explained to Plaintiff when he first started his job that she wanted him to perform

18  calculations manually when assembling the monthly odometer report and then forward her a copy.

19  Capozzi Decl., Ex. A, dep Ex 7.  Plaintiff ignored this instruction, entered data into the computer

20  directly, did not provide Ms. Alcantar a copy, and instead asked her why she could not just print her

21  own copy.  *Id*.  Ms. Alcantar informed Plaintiff that he had failed to follow her instructions.  *Id*.

22  Plaintiff became upset, replied that his way was faster, and then just walked away.  *Id*.

23  In another instance, Plaintiff reformatted the department's historical Master Vehicle Log, in direct

24  defiance of Ms. Alcantar's instructions not to reformat the report in any way.  Alcantar Decl. at ¶6.

25  When Ms. Alcantar asked him why he changed the report format, Plaintiff initially claimed that he

26  had not changed it.  *Id*.  Then he admitted that he "changed it a little bit."  *Id*.  Plaintiff went on to

27  say, "I assumed it would help you.  I am sorry and will not assume again.  I guess that is what gets

28  me in trouble."  Capozzi Decl., Ex. A, dep Ex. 7.

1    Ms. Alcantar repeatedly instructed Plaintiff to take notes while she was training him, as well

2  as during his routine duties.  *Id.*  However, Plaintiff would neglect to take notes, and even when he

3  did take notes, he typically put little effort into it.  *Id.*, Alcantar Decl. at ¶ 7.  At one point, Plaintiff,

4  in a defiant and sarcastic tone, asked Ms. Alcantar what she was looking for in all the notes she was

5  always telling him to take.  Capozzi Decl., Ex. A, dep Ex. 7.   His failure to take notes likely

6  contributed to his difficulty completing his assignments satisfactorily.  *Id.*; Capozzi Alcantar Decl. at

7  ¶ 7.

8    Ms. Alcantar repeatedly gave Plaintiff instructions on tasks and often showed him step-by-

9  step what he needed to do.  Alcantar Decl. at ¶5.  During this training, Plaintiff would repeatedly

10  insist that steps in processes were unnecessary or redundant.  *Id.* at ¶9; Gorley Decl. at ¶¶ 5-6;

11  Capozzi Decl., Ex. A 62:12-66:7.  When he was on his own to complete a task, he would skip those

12  steps, and produce an incorrect or incomplete result.  Alcantar Decl. at ¶¶ 7-9.  Plaintiff's deposition

13  testimony reveals his attitude toward Ms. Alcantar's instructions:

14      Q (Defendant). So there were -- some of the things she was telling you to do you
    didn't believe were necessary; is that correct?
15      A (Plaintiff). It wasn't about being necessary. They were -- they were wrong and
    redundant.
16      Q. Let me get this straight, then. She was training you on the job?
17      A. Yes.
    Q. You weren't training her, but what you're telling me is the things she was telling
18      you, you believe were redundant?
    A. They were adding extra steps to stuff.
19      Q. In your opinion?
20      A. No. They were adding extra steps, not an opinion.
    Q. Well, obviously, she didn't think that because she --
21      A. I don't know what she thought.
    Q. Well, she either --
22      A. I just know the steps she was telling me were adding extra steps, having me go
    back to the beginning and start over every time I'd be doing a process that she
23      wanted me to do that was entering data into a database, and she'd have me start at
    page 1 and then work my way up to page 4 or whatever the number was, and then
24      instead of me just refreshing page 4 and adding the next information, she had me
25      start over, page 1.  Everything she was trying to get me to do was to take more time
    and waste my time and effort to make the job harder.

26

27  Capozzi Decl., Ex. A 62:12-64:1.  It is clear from his responses, that Plaintiff's attitude toward his

28  training was that he knew better than Ms. Alcantar, and that she was not training him in the most

Defendant's Notice of Motion and Motion for Summary Judgment           Case No. 16-CV-02847 BLF
or in the Alternative Summary Adjudication; Memo of P's & A's

1  efficient way to accomplish tasks.  In fact, he believed that her methods were not just unnecessary,

2  they were "wrong and redundant."  *Id.*

3      Plaintiff also misrepresented his computer skills during an interview for the position in the

4  Probation Department.  Capozzi Decl., Ex. A, dep Ex 7.  Ms. Gorley explained during the interview

5  that the position would require a good deal of clerical work, including computer work.  Gorley Decl.

6  at ¶ 7.  Plaintiff claimed that he knew computer programs well, including Microsoft Excel.  *Id.*

7  When Plaintiff started working it became clear that he was not familiar with Excel or other

8  programs, because he had difficulty creating documents with the computer.  *Id.*  Ms. Alcantar

9  arranged for him to take a computer class, but his work did not improve to the level required for the

10  position.  *Id.*

11      The evidence before the Court also reflects that Plaintiff's poor performance was

12  compounded by his abrasive and uncooperative attitude with his supervisors.  Alcantar Decl. at ¶¶ 9,

13  13; Gorley Decl. at ¶ 6.  On numerous occasions, Plaintiff would resist training efforts by Ms.

14  Alcantar, who sought to make him a successful part of her unit.  Alcantar Decl. at ¶ 5.  When Ms.

15  Alcantar showed Plaintiff deficiencies in his work, he would become frustrated, and during one

16  meeting he became angry and threatening toward Ms. Alcantar, standing up and leaning toward her,

17  and yelling at her.  Capozzi Decl., Ex. A, dep Ex 7.  After that meeting, Ms. Alcantar no longer felt

18  safe meeting with Plaintiff alone.  Alcantar Decl. at ¶ 13.

19      Ms. Gorley became more involved with Plaintiff's supervision when it became clear that he

20  was not achieving the required standard in terms of his job performance, and he was having

21  difficulty responding to training and instructions from Ms. Alcantar.  *Id.*, Gorley Decl. at ¶¶ 8-10.

22  Beginning in September, Ms. Gorley and Ms. Alcantar met together with Plaintiff biweekly to

23  counsel him and attempt to improve his performance.  Gorley Decl. at ¶ 8.  They also went to great

24  lengths to explain the reasons behind the department's procedures and methods.  Alcantar Decl. at ¶

25  9; Gorley Decl. at ¶ 6.  Despite their efforts, the two supervisors met with Plaintiff's intransigence

26  and insistence that he knew a better way to get the job done, and that their methods were inefficient

27  and unnecessary.  Alcantar Decl. at ¶¶ 7-10, Gorley Decl. at ¶ 6.

28

1    Ultimately, Plaintiff would choose to ignore their instructions, and his resulting work was

2  routinely late, incomplete, and incorrect.  Capozzi Decl., Ex. A, dep Ex 7; Alcantar Decl. at ¶¶ 7-10,

3  12; Gorley Decl. at ¶¶ 5-6, 10.  Plaintiff failed to improve, and Ms. Gorley made the decision to

4  release him from his job.  Gorley Decl. at ¶ 11; Capozzi Decl., Ex. A, dep Ex 7.  It is noteworthy that

5  Plaintiff does not allege any discrimination on the part of Ms. Gorley, in fact, in his deposition,

6  Plaintiff was asked specifically whether he believed that Ms. Gorley was also discriminating against

7  him based upon his race.  Capozzi Decl., Ex. A, 53:2-53:7.  Plaintiff replied, "I do not believe that

8  Vickie Gorley was discriminating against me because of my Caucasian status."  *Id.*

9    It is also important to note that Plaintiff's inability to perform had impacts on the Probation

10  Department.  Alcantar Decl. at ¶ 14.  Ms. Alcantar's unit fell behind in accomplishing assigned tasks

11  because Plaintiff was unable to complete his assignments.  *Id.*  Ms. Alcantar spent a tremendous

12  amount of time on Plaintiff's training, and retraining, as well as his need for intensive supervision.

13  *Id.*  She often needed to complete his assigned tasks herself, or correct deficiencies in his work.  *Id.*

14  As a result, she found that she could not accomplish her other duties and supervise work in her unit.

15  *Id.*  Additionally, she reduced Plaintiff's workload so that he could focus on fewer tasks, in the hopes

16  that he would become more proficient in those tasks.  *Id.*  This resulted in others, including her,

17  taking on those tasks and adding to their workloads.  *Id.*  Her unit fell so far behind, that it had to

18  hire two "extra-help" temporary personnel to assist with routine duties.  *Id.*  This was not something

19  that was necessary in the past.  *Id.*  The last three individuals that held Mr. Hermange's position did

20  not need their workloads reduced, and there was never a need to hire extra-help personnel to

21  accomplish the unit's routine duties.  *Id.*  As Ms. Gorley stated in her November 2, 2010 letter

22  notifying Plaintiff of his release, because of his inability to perform assigned tasks, his unit had

23  suffered diminished capability to serve its internal and external customers.  Capozzi Decl., Ex. A,

24  dep Ex 7.

25    In demonstrating the Plaintiff's inability to accomplish assigned tasks correctly and in a

26  timely manner, as well as his abrasive and uncooperative nature with his supervisors, the County has

27  met its burden to produce evidence of legitimate, nondiscriminatory reasons for Plaintiff's release

28  from probation.

Defendant's Notice of Motion and Motion for Summary Judgment                Case No. 16-CV-02847 BLF
or in the Alternative Summary Adjudication; Memo of P's & A's

1        4.      <u>Plaintiff Cannot Establish That the County's Stated Reasons for his Release were a</u>
                  <u>Pretext for Discrimination</u>

2

3       In response to the defendant's offer of nondiscriminatory reasons for its actions, the plaintiff

4 must produce "specific, substantial evidence of pretext." *Steckl v. Motorola, Inc.,*703 F.2d 392, 393

5 (9th Cir.1983).  The plaintiff must provide a genuine issue of material fact as to pretext in order to

6 avoid summary judgment. *Id.*  The court in *Steckl* affirmed summary judgment for the defendant

7 when plaintiff failed to produce any facts, which if believed, would have shown pretext.  *Id.*; *see*

8 *e.g.*, *Lindblom v. Secretary of the Army*, No. 2:06-CV-2280, 2008 WL 640637, at *3-4 (E.D. Cal.

9 March 5, 2008) (citing *Jamal v. Wilshire Mgmt. Leasing Corp.*, 320 F. Supp. 2d 1060, 1076 (D. Or.

10 2004) [rejecting claim where evidence of pretext was based upon plaintiff's speculation]).

11       A plaintiff's specific, substantial evidence of pretext must hold up to the type of examination

12 demonstrated by the Ninth Circuit in *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654,

13 664 (9th Cir. 2002), *as amended* (July 18, 2002).  In *Aragon*, the defendant presented legitimate,

14 nondiscriminatory reasons for laying off the plaintiff, including his poor performance and a seasonal

15 downturn in business that required layoffs.  When the burden then shifted to the plaintiff, he

16 attempted to portray the defendant's reasons as conflicting, and he presented ambiguous statistics

17 that were not supported by any other probative evidence of discrimination.  The court found these

18 reasons unpersuasive, and far short of the *specific* and *substantial* evidence required to demonstrate

19 that the defendant's reasons were a pretext for racial discrimination.  *Id*.

20       Here, Plaintiff cannot establish that the County's stated reasons for his probationary release

21 are a pretext for discrimination.  To defeat summary judgment, Plaintiff must present specific and

22 substantial evidence that he was adequately performing his job duties.  He cannot rely on his own,

23 uncorroborated statements about his job performance.  Plaintiff cannot meet his burden because he

24 has no evidence—other than his conclusory, self-serving testimony—about his job performance,

25 therefore, the County is entitled to summary judgment in this case.

26 ///

27 ///

28 ///

Defendant's Notice of Motion and Motion for Summary Judgment          Case No. 16-CV-02847 BLF
or in the Alternative Summary Adjudication; Memo of P's & A's

1

## IV.    CONCLUSION

2      Plaintiff cannot establish a *prima facie* case because he cannot show that he was performing

3  adequately or that he was treated less favorably than similarly-situated individuals outside his

4  protected class.  Even if Plaintiff could establish a *prima facie* case, the County has presented ample

5  evidence of Plaintiff's inadequate performance as legitimate, nondiscriminatory reasons for his

6  release from probation and return to his former position.  Further, Plaintiff presents no evidence that

7  the County's stated reasons for his probationary release are a pretext for discrimination.

8  Accordingly, the County respectfully requests that the Court grant its motion for summary judgment.

9

10  Dated:  December 6, 2018                                Respectfully submitted,
                                                           JAMES R. WILLIAMS
11                                                         County Counsel

12
                                                  By:    /s/ *Christopher A. Capozzi*
13                                                        CHRISTOPHER A. CAPOZZI
                                                          Deputy County Counsel
14
                                                          Attorneys for Defendant
15                                                        COUNTY OF SANTA CLARA

16

17  1894512

18

19

20

21

22

23

24

25

26

27

28