1  JAMES R. WILLIAMS, County Counsel (S.B. #271253)
   CHRISTOPHER A. CAPOZZI, Deputy County Counsel (S.B. #271583)
2  STEPHEN H. SCHMID, Deputy County Counsel (S.B. #78055)
   OFFICE OF THE COUNTY COUNSEL
3  70 West Hedding Street, East Wing, Ninth Floor
   San Jose, California 95110-1770
4  Telephone: (408) 299-5900
   Facsimile: (408) 292-7240
5
   Attorneys for Defendant
6  COUNTY OF SANTA CLARA

7

                    UNITED STATES DISTRICT COURT
8               FOR THE NORTHERN DISTRICT OF CALIFORNIA
                         (San José Division)
9

10 MICHEL HERMANGE,                        No. 16-CV-02847 BLF

11            Plaintiff,                    **DECLARATION OF CHRISTOPHER A.**
                                            **CAPOZZI IN SUPPORT OF**
12 v.                                       **DEFENDANT'S MOTION FOR SUMMARY**
                                            **JUDGMENT, OR IN THE ALTERNATIVE,**
13 COUNTY OF SANTA CLARA,                   **SUMMARY ADJUDICATION**

14            Defendant.                    Date:    February 21, 2018
                                            Time:    9:00 a.m.
15                                          Crtrm:   3, 5th Floor
                                            Judge:   Beth Labson Freeman
16

17 I, Christopher A. Capozzi, declare that:

18        1.      I am an attorney licensed to practice in all the courts of the State of California and in

19 this Court.  I am a Deputy County Counsel with the Office of the County Counsel for the County of

20 Santa Clara.  I represent Defendant in the above-captioned action.

21        2.      I have personal knowledge of all the matters stated herein and could testify truthfully

22 thereto if called to testify.

23        3.      Attached as Exhibit A is a true and correct copy of excerpts of the deposition of

24 Michel Hermange, taken on June 12, 2018, as well as Exhibits 2-5, 7, and 9 of that deposition.

25 ///

26 ///

27 ///

28 ///

                                            1

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true, and that this declaration was executed on December 6, 2018 at San Jose,

3    California.

4    _____

5    CHRISTOPHER A. CAPOZZI

6
     1862877

Declaration of Christopher A. Capozzi ISO Defendant's Motion for                16-CV-02847 BLF
Summary Judgment, or in the Alternative, Summary Adjudication

Exhibit A

1                UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                     (San Jose Division)

4

5    MICHEL HERMANGE,                )
                                     )
6                 Plaintiff,         )
                                     )
7        vs.                         )    Case No.:
                                     )    16-CV-02847-BLF
8    COUNTY OF SANTA CLARA,          )
                                     )
9                 Defendant.         )
                                     )
10   _____ )

11                DEPOSITION OF MICHEL HERMANGE

12

13   DATE:          Tuesday, June 12, 2018

14
     TIME:          10:28 o'clock a.m.
15

16   LOCATION:      COUNTY OF SANTA CLARA

17                  OFFICE OF THE COUNTY COUNSEL

18                  70 West Hedding Street

19                  East Wing, Ninth Floor

20                  San Jose, California 95110

21

22

23

24

25   REPORTED BY:  THERESA WARD, C.S.R. 9587

```
 1                   A P P E A R A N C E S :

 2

 3    For the Plaintiff:   MICHEL HERMANGE, IN PRO PER
                           3552 Clayton Road
 4                         San Jose, California 95127
                           (408) 533-2244
 5
      For the Defendants:  COUNTY OF SANTA CLARA
 6                         OFFICE OF THE COUNTY COUNSEL
                           BY: STEPHEN H. SCHMID, ESQ.
 7                         70 West Hedding Street
                           East Wing, Ninth Floor
 8                         San Jose, California 95110
                           (408) 299-5900
 9                         stephen.schmid@cco.sccgov.org

10    Also present:        DEBRA HERMANGE

11                         McMAHON & ASSOCIATES
                           BY:  DANIEL STROUD, VIDEOGRAPHER
12                         97 East St. James Street
                           San Jose, California 95112
13                         (408) 298-6686

14

15

16

17

18

19

20

21

22

23

24

25
```

```
10:43:04  1   avoid filing the lawsuit, and I spoke to Sylvia

10:43:07  2   Gallegos.

10:43:09  3       Q.  Uh-huh.

10:43:10  4       A.  She was a deputy county executive, and told her I

10:43:13  5   wanted the County to look into my claims, and she said

10:43:15  6   that they would not do it unless I filed a lawsuit.

10:43:21  7       Q.  Okay.  And was that the -- was that the extent of

10:43:30  8   your interaction with Sylvia Gallegos?

10:43:33  9       A.  Yeah.  She would not discuss anything having to

10:43:35 10   do with it.  She just told me if I wanted the County to

10:43:40 11   look into it, that I would have to follow file a

10:43:43 12   lawsuit.

10:43:43 13       Q.  Did you have any follow-up interaction with her?

10:43:46 14       A.  No.

10:43:46 15       Q.  Was that your first interaction with her, as far

10:43:49 16   as you know?

10:43:49 17       A.  That was the first time I called her to discuss

10:43:53 18   this.

10:43:53 19       Q.  Okay.  "This" meaning your claim against --

10:43:58 20       A.  Claim of discrimination.

10:43:59 21       Q.  Right.  So then you filed the complaint in July

10:44:02 22   of 2016, correct?  That's Exhibit 4, I believe.  I'm

10:44:21 23   sorry.  The date on it -- on the last page of the

10:44:24 24   exhibit, the date next to a signature that I'm going do

10:44:27 25   ask you whether it's yours or not is May 26th, 2016, and
```

10:44:31  1   then the file date is May 26th, 2016.

10:44:34  2       A.   Okay.   Yes, May 26th, 2016, was the day I filed.

10:44:38  3       Q.   Right.   And the July date that I referenced was

10:44:40  4   the date that was stamped in by the Board of

10:44:43  5   Supervisors, so sorry for that mistake.   So you did

10:44:47  6   prepare this complaint and file it on May 26th; is that

10:44:50  7   correct?

10:44:50  8       A.   Correct.

10:44:50  9       Q.   And that's your signature on the bottom right of

10:44:52 10   the last page of the exhibit?

10:44:54 11       A.   Yes, it is.

10:44:54 12       Q.   Okay.

10:44:56 13       A.   And the date that you're referring to that the

10:44:59 14   County stamped, what does that reference?

10:45:05 15       Q.   Well, it's not my deposition.   But typically, the

10:45:08 16   Board of Supervisors, the clerk will stamp it hand

10:45:13 17   delivered when they receive it.   So that means it was

10:45:15 18   delivered to them on that date.

10:45:17 19       A.   That was the second time I served the notice.

10:45:19 20   The first time, I had it served on Jeff Smith, the

10:45:24 21   County executive, per the federal rules that says that

10:45:27 22   any government agency, the chief officer should be the

10:45:32 23   person to be served.

10:45:34 24       Q.   Uh-huh.

10:45:35 25       A.   I had it served on Jeff Smith.   He in turn gave

```
11:27:04   1   here has a right to take a break, and generally, people

11:27:07   2   do it at -- we have been going about an hour, so if you

11:27:10   3   want to take a break now, we can take a five- or

11:27:13   4   ten-minute break and come back, and then we'll go until

11:27:15   5   about 12:15 or 20 or something like that and then we

11:27:17   6   will take a lunch break, and then we will come back

11:27:22   7   after lunch.

11:27:22   8               THE WITNESS:  Okay.  Let's take a break now.

11:27:24   9               MR. SCHMID:  Okay.  Very good.

11:27:25  10               THE VIDEOGRAPHER:  We are off the record.

11:27:27  11   The time is 11:28 a.m.

11:27:30  12               (A break was taken.)

11:34:43  13               THE VIDEOGRAPHER:  We're back on the record.

11:34:54  14   The time is 11:36 a.m.

11:34:57  15   BY MR. SCHMID:

11:35:00  16        Q.  Okay.  Vickie Gorley, Vickie Gorley was the

11:35:06  17   administrative resource unit manager; is that correct?

11:35:09  18        A.  Yes.  I believe that's her title.

11:35:12  19        Q.  And she was the one that Alcantar reported to?

11:35:16  20        A.  Yes.

11:35:16  21        Q.  Okay.  And Vickie Gorley is Caucasian?

11:35:19  22        A.  Yes.

11:35:20  23        Q.  Okay.  And did you ever complain to Vickie Gorley

11:35:26  24   that Alcantar was discriminating against you because of

11:35:29  25   your Caucasian status?
```

```
11:35:31  1    A.  No.

11:35:31  2      Q.  Okay.  Do you believe that Gorley was also

11:35:37  3  discriminating against you because of your -- you are

11:35:41  4  Caucasian?

11:35:42  5    A.  I do not believe that Vickie Gorley was

11:35:44  6  discriminating against me because of my Caucasian

11:35:49  7  status.

11:35:49  8      Q.  Okay.  Do you believe that she was involved in

11:35:52  9  the decision to give you your probationary release?

11:35:55 10    A.  I'm not aware of whether she was involved or not.

11:35:58 11  I know she wasn't at work during the time period I was

11:36:01 12  released.  That's why the releases were both signed by

11:36:07 13  Carolyn Joe in lieu of Vickie Gorley.

11:36:10 14      Q.  Where was Ms. Gorley?

11:36:11 15    A.  She was on leave.

11:36:12 16      Q.  Okay.  Can you identify any other county employee

11:36:23 17  or representative that you believe may have been

11:36:28 18  involved in your probationary release other than the

11:36:34 19  individuals we've talked about here today that may have

11:36:41 20  acted out of racial animus toward you?

11:36:43 21    A.  I'm not aware of any that acted out of racial

11:36:46 22  animus.

11:36:47 23      Q.  Okay.  Are there others that you are aware of

11:36:49 24  that were involved in the decision to give you a

11:36:52 25  probationary release?
```

11:36:56 1      A.  Are you talking about people at Adult Probation

11:36:59 2   or people that assisted them?

11:37:01 3      Q.  No, people who participated in the decision.  We

11:37:04 4   know about Alcantar.  We know that Gorley supervised

11:37:07 5   Alcantar and may or may not have been involved.  We know

11:37:11 6   about Dolores Nnam and Sheila Mitchell.  Is there

11:37:15 7   anybody else that, as you sit here today that you

11:37:17 8   believe was involved in the decision?

11:37:19 9      A.  No.  Those four are the only people that I am

11:37:22 10  aware of that were involved, or possibly four.  Like I

11:37:25 11  said, I don't know whether Vickie was involved in the

11:37:28 12  decision or not.  I know she wasn't at work during the

11:37:31 13  time it happened.

11:37:32 14     Q.  Okay.  Now, you did have a hearing before the

11:37:35 15  Personnel Board; is that correct?

11:37:36 16     A.  That is correct.

11:37:36 17     Q.  Okay.  And then you received their decision?

11:37:39 18     A.  Yes.

11:37:39 19     Q.  And did you -- as you sit here today, do you have

11:37:44 20  any complaint that that hearing was not conducted fairly

11:37:48 21  to you?

11:37:49 22     A.  Yes, I do.

11:37:50 23     Q.  And what is that complaint?

11:37:51 24     A.  Oh, there is so many things I take issue with on

11:37:58 25  that hearing.  One, all the evidence that I submitted to

| | | |
|---|---|---|
| 11:47:42 | 1 | A.   2010.   And there's another day.   I don't know if |
| 11:47:55 | 2 | it's in the timeline, but I spoke to Ms. Gorley and said |
| 11:48:00 | 3 | that Ms. Alcantar was treating me poorly and I felt she |
| 11:48:04 | 4 | was hazing me, and she asked if she should intervene, |
| 11:48:10 | 5 | and I told her not to, but she went ahead and talked to |
| 11:48:13 | 6 | Susie anyway and told her I was complaining about her. |
| 11:48:16 | 7 | Q.   Okay.   Would that have been before or after the |
| 11:48:19 | 8 | September 30th complaint? |
| 11:48:20 | 9 | A.   That was before. |
| 11:48:20 | 10 | Q.   Before.   Okay. |
| 11:48:25 | 11 | A.   It was actually before July, too. |
| 11:48:35 | 12 | Q.   Okay.   So when you started in May of 2010, was |
| 11:48:43 | 13 | Alcantar, was she showing you how the job was to be |
| 11:48:46 | 14 | done? |
| 11:48:47 | 15 | A.   She was supposed to train me, but she would tell |
| 11:48:52 | 16 | me she doesn't have time to train me and I need to |
| 11:48:55 | 17 | figure stuff out on my own.   She'd give me occasional |
| 11:49:00 | 18 | handouts and sometimes would sit me down and show me how |
| 11:49:06 | 19 | to do stuff on the computer, and lots of times, she |
| 11:49:10 | 20 | would add extra steps and make it more difficult than it |
| 11:49:13 | 21 | needed to be. |
| 11:49:16 | 22 | Q.   So there were -- some of the things she was |
| 11:49:18 | 23 | telling you to do you didn't believe were necessary; is |
| 11:49:21 | 24 | that correct? |
| 11:49:21 | 25 | A.   It wasn't about being necessary.   They were -- |

11:49:24  1  they were wrong and redundant.

11:49:27  2      Q.  Let me get this straight, then.  She was training

11:49:29  3  you on the job?

11:49:30  4      A.  Yes.

11:49:30  5      Q.  You weren't training her, but what you're telling

11:49:34  6  me is the things she was telling you, you believe were

11:49:37  7  redundant?

11:49:38  8      A.  They were adding extra steps to stuff.

11:49:43  9      Q.  In your opinion?

11:49:44  10      A.  No.  They were adding extra steps, not an

11:49:48  11  opinion.

11:49:48  12      Q.  Well, obviously, she didn't think that because

11:49:51  13  she --

11:49:52  14      A.  I don't know what she thought.

11:49:53  15      Q.  Well, she either --

11:49:55  16      A.  I just know the steps she was telling me were

11:49:57  17  adding extra steps, having me go back to the beginning

11:50:01  18  and start over every time I'd be doing a process that

11:50:04  19  she wanted me to do that was entering data into a

11:50:08  20  database, and she'd have me start at page 1 and then

11:50:11  21  work my way up to page 4 or whatever the number was, and

11:50:15  22  then instead of me just refreshing page 4 and adding the

11:50:19  23  next information, she had me start over, page 1.

11:50:22  24          Everything she was trying to get me to do was to

11:50:26  25  take more time and waste my time and effort to make the

11:50:30  1      job harder.

11:50:31  2          Q.  So --

11:50:32  3          A.  I believe she had an agenda to make it so the job

11:50:35  4      was so difficult that I would quit.

11:50:39  5          Q.  Okay.  So if she asked you to do something that

11:50:46  6      required extra, unnecessary steps, would you let her

11:50:49  7      know that you didn't think they were necessary?

11:50:51  8          A.  No.

11:50:51  9          Q.  You wouldn't push back against that?

11:50:56  10         A.  No.

11:50:57  11         Q.  You always went along with it?

11:50:58  12         A.  I did what needed to be done.

11:51:03  13         Q.  Well --

11:51:04  14         A.  I didn't argue with her.

11:51:06  15         Q.  It sounds like she had you doing things that you

11:51:08  16     didn't think were necessary.

11:51:09  17         A.  Yes.

11:51:10  18         Q.  And your testimony now is at no time did you tell

11:51:14  19     her in your own words that, That's not really necessary.

11:51:17  20     Is there an easier way to do this?

11:51:19  21         A.  Sometimes I'd let her know.

11:51:21  22         Q.  Okay.  And how would she respond to that?

11:51:23  23         A.  She would tell me, Do it the way I told you to do

11:51:27  24     it and don't ask questions.

11:51:28  25         Q.  And how did that make you feel?

11:51:30  1    A.  I thought she was just messing with me.  I

11:51:32  2    thought it was a little hazing ritual.

11:51:37  3    Q.  So you describe her training methods as hazing.

11:51:41  4    Would you agree that perhaps she was doing what she

11:51:45  5    always does when she trains people, and maybe she had

11:51:48  6    underestimated your intelligence?

11:51:50  7    A.  I don't know what she did with other people.

11:51:52  8    Q.  Well, would you agree that that's possible, that

11:51:55  9    she had her own method for training people?

11:51:58  10   A.  There's no way for me to answer that.  I don't

11:52:00  11   know.

11:52:00  12   Q.  Okay.  Did you ever tell her, you know, in so

11:52:03  13   many words, you know, I already know how to do a lot of

11:52:06  14   this stuff, so, you know, maybe we can save some time

11:52:10  15   here if I tell you what I can -- did you ever try to

11:52:13  16   approach her like that?

11:52:14  17   A.  I don't recall if I did that or not.

11:52:17  18   Q.  Did you ever question why you were expected to

11:52:23  19   perform tasks in certain specified ways that you didn't

11:52:27  20   think were necessary?

11:52:28  21   A.  Yes.

11:52:28  22   Q.  And you were vocal about that with her, correct?

11:52:33  23   A.  Yes.

11:52:33  24   Q.  And she didn't receive it well.  Is that fair and

11:52:40  25   also correct?

11:52:40  1      A.  That is correct.

11:52:43  2      Q.  And she would indicate to you that she was

11:52:44  3   unhappy that you were being vocal with her about

11:52:48  4   objecting to the way she wanted you to do things.  Fair?

11:52:53  5      A.  She never said specifically, but yeah.  She never

11:52:58  6   said to me, that I recall, I don't appreciate the way

11:53:01  7   you're, you know, responding to me or whatever.

11:53:05  8      Q.  She asked you to take notes during the time she

11:53:08  9   was trying to train you?

11:53:10  10      A.  Yes.

11:53:10  11      Q.  And did you refuse to take notes?

11:53:13  12      A.  Absolutely not.

11:53:14  13      Q.  Ever?

11:53:15  14      A.  Never.  I never once refused to take notes.  I

11:53:19  15   always asked her exactly what she wanted in the notes,

11:53:22  16   and she falsely claims that I would argue about whether

11:53:26  17   I should take notes or whether notes were necessary.

11:53:29  18   But that was never, ever the case.  I always asked her

11:53:32  19   exactly what it is she wanted so I could give her what

11:53:37  20   she needs.  That was the number one thing that I wanted,

11:53:39  21   to do a good job for her, so I always asked her

11:53:42  22   questions specifically, exactly what did she need?  And

11:53:47  23   she falsely claims that I would argue on whether note

11:53:52  24   taking was necessary or not.  But that never happened.

11:53:55  25   I never once said I didn't want to take notes.

11:58:45  1    her?

11:58:45  2        A.  Very rarely.  I pretty much had to train myself.

11:58:50  3        Q.  Did she ever tell you that she wanted -- that she

11:58:52  4    appreciated your suggestions on different ways of doing

11:58:54  5    things, but because you were being trained, she wanted

11:58:58  6    you to first accept and learn her methodology before

11:59:02  7    questioning and suggesting alternative things?

11:59:05  8        A.  She said something to that effect, yes.

11:59:07  9        Q.  And when you received that from her, were you

11:59:09  10   offended?

11:59:10  11       A.  No.

11:59:10  12       Q.  Did you think it was a reasonable request?

11:59:14  13       A.  No.

11:59:15  14       Q.  Why not?

11:59:16  15       A.  Because if someone is not willing to work with

11:59:23  16   someone and see another point of view, they're not being

11:59:27  17   a very good manager.  If I could save a lot of time and

11:59:31  18   effort for our department, why wouldn't she be open to

11:59:35  19   that?

11:59:35  20       Q.  Well, her point of view was she wanted you to

11:59:38  21   learn it her way first to make sure she felt comfortable

11:59:41  22   that you had it down.

11:59:42  23       A.  And I did learn the things her way first, and

11:59:45  24   then I made suggestions of how to improve them.  She

11:59:48  25   didn't want any suggestions until after I passed my

11:59:51  1   six-month probationary period, which she had already

11:59:55  2   predetermined I wouldn't be doing.

11:59:56  3       Q.  Well, but you were not happy with the fact that

11:59:59  4   you had to wait six months before you could start to be

12:00:01  5   more independent in the job, fair to say?

12:00:05  6       A.  It's not something that I worried about.

12:00:07  7       Q.  Then why would you care if she wanted you to do

12:00:10  8   it her way for six months?

12:00:12  9       A.  Because she was treating me hostile and it was

12:00:22 10   obvious she was trying to make my job harder.

12:00:25 11       Q.  But did you understand that she was upset that

12:00:29 12   you didn't -- you didn't want to do things her way?  Did

12:00:32 13   you understand that?

12:00:33 14       A.  No.  I don't think that was her problem.

12:00:37 15       Q.  And you were notified of your probationary

12:00:48 16   release by whom?

12:00:51 17       A.  Susana Alcantar.

12:00:54 18       Q.  And just take me through how that happened.

12:00:57 19       A.  She made an announcement -- I actually don't

12:01:03 20   remember if she called me or made an announcement.  I

12:01:06 21   think she made an announcement over the loudspeaker and

12:01:09 22   told me to report to Internal Affairs.

12:01:11 23       Q.  So it was, Mike Hermange, please report to

12:01:16 24   Internal Affairs?

12:01:16 25       A.  Yes.

```
 1   STATE OF CALIFORNIA      )
                              )  ss.
 2   COUNTY OF SANTA CLARA    )

 3

 4        I, THERESA WARD, a Certified Shorthand Reporter

 5   in and for the State of California, hereby certify that

 6   the witness in the foregoing deposition,

 7                   MICHEL HERMANGE,

 8   was by me duly sworn to tell the truth, the whole truth,

 9   and nothing but the truth in the within-entitled cause,

10   and that the foregoing is a full, true, and correct

11   transcript of the proceedings had at the taking of said

12   deposition, reported to the best of my ability, and

13   transcribed under my direction;

14        That before completion of the deposition, review

15   of the transcript [X] was [ ] was not requested.  If

16   requested, any changes made by the deponent and provided

17   during the review period have been attached here.

18

19   Date:  June 27th, 2018
                                    Theresa Ward, C.S.R.  9587
20

21

22

23

24

25
                                                         126
```

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 556-2011-00552 |

~~California Department Of Fair Employment & Housing~~ *State or local Agency, if any*                      and EEOC

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Michel Hermange** | **(408) 923-7205** | **12-09-1963** |

Street Address: **3552 Clayton Road, San Jose, CA 95127**     City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **SANTA CLARA PROBATION DEPARTMENT** | **500 or More** | **(408) 435-2000** |

Street Address: **2314 N. First Street, San Jose, CA 95131**     City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                                             City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **11-15-2010**   Latest **11-15-2010**
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on September 14, 2006. I applied for and was hired as a Facilities Maintenance Representative (FMR) in May 2010. Shortly after starting the FMR position, I was informed by some coworkers, in the Probation Department, that my supervisor, Susana Alcantar, Caucasian, is racist. Also, some management staff told me that Ms. Alacantar didn't want to hire me and that she might try to get rid of me. On November 15, 2010, Respondent released my from probation alleging that I did not meet performance requirements. I deny the purported reasons for my release from probation. I complained to Luke Leung, Deputy County Executive, Asian, to no avail.

Respondent did not provide any legitimate reasons for why it failed to promote me or why it demoted me from the FMR position.

I believe I have been discriminated against due to my race, Caucasian, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

**Jul 26, 2011** _Date_      Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

RECEIVED JUL 26 2011 EEOC-SJLO

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)


EXHIBIT
DEFT 2
HERMANGE

Ⓢ HERMANGE,
MICHEL

EEOC Form 161 (11/09)                    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Michel A. Hermange<br>3552 Clayton Road<br>San Jose, CA 95127 | From: | San Jose Local Office<br>96 North Third Street<br>Suite 250<br>San Jose, CA 95112 |
|---|---|---|---|

|  | ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 556-2011-00552 | Lisa B. Fung,<br>Investigator | (408) 291-4247 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Tim Berta_                                    FEB 2 6 2016

Enclosures(s)

**Terrie Brodie,**
**Acting Director**                              (Date Mailed)

cc:     **Santa Clara County**
**Sabahete Kraja, EOD Director**
**Equal Opportunity Department**
**2310 North First Street, Suite 101**
**San Jose, CA 95131**

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Michel A. Hermange<br>3552 Clayton Road<br>San Jose, CA 95127 | From: San Jose Local Office<br>96 North Third Street<br>Suite 250<br>San Jose, CA 95112 |
|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 556-2011-00552 | Lisa B. Fung,<br>Investigator | (408) 291-4247 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____          FEB 2 6 2016

Terrie Brodie,                                      (Date Mailed)
Acting Director

Enclosures(s)

cc:   Santa Clara County
      Sabahete Kraja, EOD Director
      Equal Opportunity Department
      2310 North First Street, Suite 101
      San Jose, CA 95131



Enclosure with EEOC
Form 161 (11/09)

## Information Related to Filing Suit
## Under the Laws Enforced by the EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**Private Suit Rights** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**Private Suit Rights** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 – in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**Attorney Representation** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**Attorney Referral and EEOC Assistance** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

HAND-DELIVERED

Board # _16 - 214_
CC: ✓1 to County Counsel
   ✓1 to ESA Insurance
Date/Initials: 7|11 16 ᴐⁿ

ADR
E-FILING

BD. SUP. '16 JUL 1 PM 1:46

ORIGINAL
FILED

MAY 26 2016

Susan Y. Soong
Clerk, U.S. District Court
Northern District of California
San Jose

| 1 | Your Name: | Michel Hermange |
| 2 | Address: | 3552 Clayton Road San Jose Ca 95127 |
| 3 | Phone Number: | 408-533-2244 |
| 4 | Fax Number: | |
| 5 | E-mail Address: | redchevyman@yahoo.com |
| 6 | Pro Se Plaintiff | |

United States District Court

Northern District of California

CV 16 2847 HRL

Michel Hermange

Case Number: *[leave blank]*

    Plaintiff(s),

      vs.

County of Santa Clara

**COMPLAINT**

DEMAND FOR JURY TRIAL

Yes ■  No ☐

    Defendant(s).

   1. **Parties in this Complaint**

    a. **Plaintiff(s).** *Write your name, address, and phone number. If there are other plaintiffs, use more pages to include their names, addresses, and phone numbers.*

Name: Michel Hermange

Address: 3552 Clayton Road San Jose Ca 95127

Phone number: 408-533-2244

COMPLAINT
PAGE 1 OF 5 [JDC TEMPLATE]

*rev: 6/2013*

EXHIBIT
DEFF 4
HERMANGE

JS 44 (Rev. 12/12) cand rev (1/15/13)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Michel Hermange | County of Santa Clara |

**(b)** County of Residence of First Listed Plaintiff     Santa Clara
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant     Santa Clara
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

CV 16 2847   HRL

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
    Plaintiff

☒ 3   Federal Question
    *(U.S. Government Not a Party)*

☐ 2   U.S. Government
    Defendant

☐ 4   Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | Act |
| | Medical Malpractice | | Leave Act | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act of 1964; 42 U.S.C. Section 2000e-5; 42 U.S.C. Section 2000e-5(g)

Brief description of cause:
Discrimination based on race or color

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
60,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)

(Place an "X" in One Box Only)

☐ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE   ☐ EUREKA

b. **Defendant(s).** *Write the full name and address of every defendant. If the defendant is a corporation, write the state where it is incorporated and the state where it has its main place of business. Use more pages if you need to.*

**Defendant 1:**

Name: County of Santa Clara

Address: 70 W Hedding Street San Jose Ca 95110

_____

**Defendant 2:**

Name:_____

Address:_____

_____

**Defendant 3:**

Name:_____

Address:_____

_____

**Defendant 4:**

Name:_____

Address:_____

_____

2. **Jurisdiction**

*Usually, only two types of cases can be filed in federal court: cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.*

☑    My case belongs in federal court under <u>federal question jurisdiction</u> because it is about federal law(s) or right(s).

*Which law(s) or right(s) are involved?* discrimination based on race. pursuant to Title VII of the Civil Rights Act of 1964;   42 U.S.C Section 2000e-5;   42 U.S.C Section 2000e-5(g)

☐    My case belongs in federal court under <u>diversity jurisdiction</u> because none of the plaintiffs live in the same state as any of the defendants <u>AND</u> the amount of damages is more than $75,000.

COMPLAINT
PAGE 2  OF 5  [JDC TEMPLATE]

*rev: 6/2013*

1    3.  Venue

2       *This Court can hear cases arising out of Alameda, Contra Costa, Del Norte, Humboldt,*

3    *Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco,*

4    *San Mateo, and Sonoma counties. This is the right court to file your lawsuit if 1) All defendants*

5    *live in California AND at least one of the defendants lives in this district; OR 2) A substantial*

6    *part of the events you are suing about happened in this district; OR 3) A substantial part of the*

7    *property that you are suing about is located in this district; OR 4) You are suing the U.S.*

8    *government or a federal agency or official in their official capacities and you live in this district.*

9    *Explain why this district court is the proper location to file your lawsuit.*

10      Venue is appropriate in this Court because  Federal EEOC rules require filing in Federal

11   Court. A substantial part of the events happened in this district.

12   _____

13   4.  **Intradistrict Assignment**

14      *There are three divisions of this Court: San Francisco/Oakland, San Jose, and Eureka.*

15   *The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San*

16   *Francisco, San Mateo, and Sonoma counties.  The San Jose division covers Monterey, San*

17   *Benito, Santa Clara, Santa Cruz counties.  The Eureka division covers Del Norte, Humboldt,*

18   *Lake, Mendocino counties, only if all parties consent to a magistrate judge.  Explain which*

19   *division your case should be assigned.*

20      This lawsuit should be assigned to *[Select one: San Francisco/Oakland, San Jose, OR*

21   *Eureka]* Division of this Court because  San Jose because incidents took place in Santa Clara

22   County.

23   _____

24   5.  **Statement of Facts and Claims**

25      *Write a short and simple description of the <u>facts</u> of your case.  Include WHERE and*

26   *WHEN the events happened, WHO was involved, WHAT role each defendant played, and HOW*

27   *you were harmed.  If you know which laws or rights the defendant violated, you can include them,*

28   *but you do not need to make legal arguments.  Put each fact or claim into a separate, numbered*

COMPLAINT
PAGE 3__ OF 5__ [JDC TEMPLATE]

*rev: 6/2013*

1  *paragraph, starting with 5a, 5b, and so on.  Attach additional sheets of paper as necessary.  You*

2  *may attach documents that support your claims to the end of this Complaint as exhibits.  Explain*

3  *what each exhibit is, when and how you got it, and how it supports your claims.  Attaching a*

4  *document to your Complaint does not necessarily mean that it will be accepted as evidence.*

5  5a. On May 17, 2010 I was hired as a Facilities Maintenance Representitive (FMR) in the

6  Santa Clara CountyProbation Department. On the first day on the job I was approached by

7  multiple managers who told me that I should expect to be let go from the position because my

8  new manager Susana Alcantar does not want me working for her. They all told me she hates

9  white people and was forced to hire me even though she protested saying she did not like me.

10  She took the day off on in protest my first day on the job. She was hostile to me on a daily basis

11  and had me perform humiliating tasks on a daily basis. (I.E. sorting 12 sets of trash, compost and

12  recycle bins twice a day by hand). I did everything I was told to do and learned every part of the

13  job that I was trained to do. I had a review every two weeks with Susana Alcantar and Vicky

14  Gorley. No deficiencies were noted in any of the bi weekly reviews until after I was told I was

15  being let go. The alleged deficiencies were false issues that were not part of my job.

16  5b.  On October 28, 2010, I was called by my manager to report to the Internal Affairs

17  office at Adult Probation. Susana Alcantar served me with a release that falsely claims that I was

18  incompetent, ineficient and insubordinate in my job duties. The release from the FMR position

19  and demotion cost me several thousand dollars a year in lost wages. It also damaged my

20  reputation as these false allegations are a permanant part of my personel file. I will never be able

21  to get a promotion with these lies in my file which will lead to future lost wages.

22  5c. I was dismissed based on my race.

23  5d. I have exhausted all of my administrative remedies. I had a adinistrative review at Adult

24  Probation, I also had a Personel Board Hearing, I also requested a review from 2 seperate Deputy

25  County Executives. I also contacted the County EOD, I also filed a complaint with the EEOC

26  and have recieved a right to sue letter that is attached to my complaint.

27

28

COMPLAINT

PAGE 4__ OF 5__ [JDC TEMPLATE]

*rev: 6/2013*

6.   **Demand for Relief**

*State what you want the Court to do for you.  For example, depending on which claims*
*you raise, it may be appropriate to ask the Court to award you money or order the defendant to*
*do something or stop doing something.   If you are asking for money, you can say how much you*
*are asking for and why you should get that amount.*

I am seeking to have my personel filed purged of all the false alegations of poor work

performance. I am also requesting back pay for the difference in salary from FMR position to the

MM3 postion I was demoted back to. I am also seeking punitive damages because the County

allowed these actions to happen and refused to act when I made complaints to the Deputy

County Excecutive Luke Leung in person June 23, 2011. He claimed he would look into my

complaints but then refused to respond to emails and phone calls after our original meeting.

 I also contacted Deputy County Excecutive Sylvia Gallegos on 5-26-2016, She was not willing

to look into my claims.  I am also seeking all attorney fees and court related costs.

7.   **Demand for Jury Trial**

*Check this box if you want your case to be decided by a jury, instead of a judge.*

☑        Plaintiff demands a jury trial on all issues.

*All plaintiffs must sign, date, and print their names at the end of the Complaint.  Attach*
*another page if you need to.*

Respectfully submitted,

Date:   5-26-2016          Sign.Name:   *Michel Hermange*

Print Name:   Michel Hermange

COMPLAINT
PAGE 5  OF 5  [JDC TEMPLATE]

*rev: 6/2013*



My List | Preferences | Help & Support | Logout

| Tests | Post |

Welcome, Susana Alcantar                                              Candidate Application
Application 1 of 1

## 07288 - Facilities Maintenance Representative - Transfer

### Contact Information -- Person ID: 340918

| | | | |
|---|---|---|---|
| Name: | Mike Hermange | Address: | 3552 Clayton Rd. San Jose, California 95127 |
| Social Security: | xxx-xx-5235 | Email: | redchevyman@yahoo.com |
| | | Notification Preference: | Email |
| Home Phone: | (408) 923-7205 | Alternate Phone: | (408) 533-2244 |

### Personal Information

| | |
|---|---|
| Driver's License: | Yes, California , Class A CDL |
| Can you, after employment, submit proof of your legal right to work in the United States? | Yes |
| What is your highest level of education? | Some College |

### Preferences

| | |
|---|---|
| Preferred Salary: | |
| Are you willing to relocate? | Maybe |
| Types of positions you will accept: | Regular |
| Types of work you will accept: | Full Time |
| Types of shifts you will accept: | Day , Evening , Night |

### Objective

To obtain a position that will enable me to use my coordination and planning skills, facilities and maintenance knowledge. I have worked extensively in all of Santa Clara County's correctional facilities including James Ranch, Murial Wright center, Juvenile Hall, Main Jail and Elmwood. I also have worked on all of the equipment at 2314 1st street adult probation.

### Education

**College**
*De Anza College*
[Unspecified Start] - [Unspecified End]
Cupertino, California

Did you graduate: No
College Major/Minor:
Units Completed: 8 Semester
Degree Received: No Degree

### Work Experience

**General Maintenance Mechanic III**
8/2008 - Present

Santa Clara County Facilities and Fleet
1555 Berger Drive, Bldg #3
San Jose, California 95112
(408) 918-2701

Hours worked per week: 40
Monthly Salary: $0.00
Name of Supervisor: Brian Spjut - Supervisor
May we contact this employer? Yes

**Duties**
- Maintain heating and ventilation at SCC correctional facilities (Jails and Ranches).
- Test generators and transfer switches monthly.
- Lead crews of 2-6 employees, assign and verify work, and train new employees.
- Perform a variety of duties that require skills in mechanics, electrical, plumbing, carpentry, painting, plastering, cementing, and other areas required to perform general facility maintenance and services.
- Prioritize, initiate and close work orders received by the Mac Room.
- Inspect and maintain fire extinguishers and other safety equipment.
- Inspect and evaluate assigned equipment to determine the repair or maintenance needed.
- Keep records for purchase orders, operation logs, and equipment receipts and prepare reports.



- Evaluate safety needs, establish and implement proper safety measures.
- Use hand and power tools in servicing and making repairs to machinery and other equipment including pumps, water softeners, and air-conditioners.
- Test and diagnose machinery using various measuring instruments including micrometers, pressure gages, and manometers.
- Install and tension Vee belts
- Install and replace various gaskets, fittings, etc. on steam, gas, and water lines.
- Care for and detect bearing problems, and install new bearings using proper methods.
- Weld metals using both oxyacetylene and the electric arc methods.
- Repair pneumatic tube systems.
- Use electronic information system equipment including computers, printers, and copiers.
- Drive trucks, tractors, and other equipment.

**Reason for Leaving**
Current Position

**Property Manager**
8/2001 - Present

Hermange Trust
San Jose, California

Hours worked per week: 10
Monthly Salary: $0.00
Name of Supervisor: Guy Hermange - Trustee
May we contact this employer? Yes

**Duties**
- Owner/Builder overseeing the construction of a new home from start to completion.
- Negotiated contracts with subcontractors and ensured work was performed according to contract.
- Ensured all paperwork was properly completed, accurate, and submitted prior to construction so building permits could be issued.
- Pulled permits from city offices.
- Coordinated the work timelines of various subs to ensure construction progressed on schedule.
- Read and understood construction blueprints.
- Completed all plumbing, wiring, painting, landscaping, and finish carpentry.
- Met with city inspectors to get sign-off on work and handled changes if requested.
- Currently remodel rental homes which includes the installation and repair of tile, plumbing, electrical, and paint.
- Interview prospective tenants, approve qualified applicants, and secure all contracts, deposits, and payments.
- Respond to tenant concerns and handle any maintenance issue which arise.

**Reason for Leaving**
Current position

**General Maintenance Mechanic II**
8/2006 - 8/2008

Santa Clara County Facilities and Fleet
1555 Berger Drive, Bldg #3
San Jose, California 95112
(408) 918-2701

Hours worked per week: 40
Monthly Salary: $0.00
Name of Supervisor: John Harrah - PM Dept. Supervisor
May we contact this employer? Yes

**Duties**
- Performed semi-skilled mechanical, electrical, plumbing, carpentry, painting and related trades tasks.
- Used hand and power tools in servicing and making minor repairs to electrically driven machinery, such as air conditioning, refrigeration and laundry equipment.
- Made minor electrical repairs such as testing circuits for power, replacing fuses and ballasts.
- Ordered, installed, and tensioned Vee belts.
- Cleared plugged drains using hand and power snakes.
- Did basic water conditioning treatment for boilers and refrigeration cooling towers.
- Lubricated machinery.
- Installed and repaired pumps.
- Repaired wheel chairs, beds, scales and similar hospital equipment, in addition to office furniture and equipment.
- Cleaned and repaired tools, lawn mowers and other garden equipment.
- Assisted in ordering tools and safety equipment.
- Issued tools from the tool crib.
- Performed related work as required.

**Reason for Leaving**
Accepted promotion to Maintenance Mechanic III

**Class A Driver**
9/1994 - 9/2001

Bay Area Contract Transportation Services
San Jose, California 95131

Hours worked per week: 45
Monthly Salary: $2,500.00
Name of Supervisor: Rick Domingez - Operations Manager

May we contact this employer? Yes

**Duties**
- Drove a 53' tractor trailer to pick up and deliver high value computer related freight.
- Kept log books and delivery paperwork.
- Maintained vehicle and equipment.
- Checked and maintained oil, fuel, brake adjustment, and lighting equipment.

**Reason for Leaving**
Left to build and remodel homes for family owned properties.

**Certificates and Licenses**

Type: Security Clearance

Number:

Issued by: SCC Department of Correction

Date Issued: 9 /2006   Date Expires: 8 /2010

Type: Motorcycle License

Number: Endorsement

Issued by: California DMV

Date Issued: 12 /1978   Date Expires: 12 /2014

Type: Forklift License

Number:

Issued by: Santa Clara County

Date Issued: 2 /2009   Date Expires: 2 /2010

**Skills**

Office Skills

Typing:
Data Entry:

Languages

French - Speak, Read

**Additional Information**

Additional Information

I also currently own and maintain a few rental homes and schedule preventive maintenance on them.

**References**

Professional
**Spjut, Brian**
Building OPS Supervisor
1555 Berger Drive, Bldg 3
San Jose, California
(408) 918-2704

Professional
**Harrah, John**
SCC PM Dept Manager
1555 Berger Drive, Bldg 3
San Jose, California
(408) 918-2780

Professional

**Frey, Terry**
SCC building OPS Supervisor
1555 Berger Drive, Bldg 3
San Jose, California
(408) 918-2700

**Resume**

**Text Resume**

**Attachments**

**Agency-wide Questions**

1. Q: Are you a current County of Santa Clara employee?
   A: Yes

2. Q: Were you previously employed by the County of Santa Clara?
   A: No

3. Q: As an adult, have you ever been convicted for an offense other than a minor traffic violation?
   A: No

4. Q: Indicate the type of offense. If no offense, select Not Applicable.
   A: Not Applicable

5. Q: If you answered "yes" to question #3, complete questions #5 - #7: What was the date of conviction?
   A:

6. Q: Where was the location of the offense?
   A:

7. Q: Describe the nature of the offense.
   A:

8. Q: Responses to the following questions will be used to identify your work shift and location availability. Most
      positions are full-time, forty hours per week day shift schedule (8:00 a.m. -5:00 p.m.), but some positions do
      have alternate shift schedules. What alternate shifts are you able to work? (Check all that apply)
   A: Swing Shift (approx. times 3:00 p.m. - 11:00 p.m.), Night Shift (approx. times 11:00 p.m. - 7:00 a.m.)

9. Q: Most positions are located within the San Jose metropolitan area. However, some postions are located in the
      northern and southern parts of the County. Indicate the location(s) where you are available to work. (Check
      all that apply)
   A: North County (Palo Alto, Mt. View, Sunnyvale ), South County (Morgan Hill, San Martin, Gilroy), Locked
      Facility, San Jose Metropolitan Area

10. Q: Do you claim Veterans Preference? (If yes, a copy (not original) of DD214 form must be submitted)
    A: No

11. Q: Select the highest level of education completed:
    A: High School/GED/CA Proficiency Exam

12. Q: Select the language(s) in which you are fluent, other than English.

NEOGOV Insight OHC - C     lidate Application                                    Page 5 of 5

A:  Other

**13.** Q:  How did you find out about the job?
A:  County Employee (Specify name of employee in Question #14)

**14.** Q:  Please indicate the exact location where you heard about the job as indicated in Question #13:
A:  Brian Spjut

**15.** Q:  We now have online job specifications, job announcements, and job application. Tell us what you think!
A:  Very good tool

Company Information  |  Privacy Policy  |  Legal Terms

Copyright © 2010 NEOGOV, Inc. All rights reserved. Patent Pending.

**County of Santa Clara**

Probation Department
Administration

840 Guadalupe Parkway
San Jose, California 95110
(408) 278-5900



Sheila E. Mitchell
Chief Probation Officer

# CERTIFICATION AND
# CONDITIONS OF EMPLOYMENT

I certify that all of the statements made on my application for _____ F M R _____, dated _____ 4-6-10 _____, are true, complete, and correct and that any misrepresentations, omissions, or falsifications will be grounds for rejection or, if already employed, grounds for termination.

I understand that my appointment to this position is contingent upon successful completion of my background investigation which includes a local criminal history clearance, a present/former employer reference check, finger-printing, and the County physical examination.

_____        _____
Applicant's Signature                              Witness

x Michel  Hermange                        5-6-2010
Print Applicant's Name                          Date Signed and Witnessed



# County of Santa Clara
## Probation Department



| | |
|---|---|
| Administration Services<br>840 Guadalupe Parkway<br>San Jose, California 95110 | Administration Services<br>2314 North First Street<br>San Jose, California 95131 |

Sheila E. Mitchell
Chief Probation Officer

November 2, 2010                                    Hand Delivered and Certified Mail

Mike Hermange
3552 Clayton Road
San Jose, CA. 95127

SUBJECT:  Amendment to Notice of Probationary Release effective November 12, 2010

The sole amendment to this notice of probationary release is to include the right to an
administrative review of the release effective November 12, 2010.

Dear Mr. Hermange,

You are hereby notified that you are being released from your position as a probationary Facility
Maintenance Representative effective at the end of your shift on November 12, 2010.  You are
being provided a ten (10) working days notice of release.

This action is based on the following charges:

Violation of Merit System Rules, Article 11:

    Section A25-301 (a)(2), Inefficiency, incompetence, or negligence in the performance of
    duties, including failure to perform assigned task or failure to discharge duties in a prompt,
    competent and responsible manner.

    Section A25-301 (5) Refusal to accept a reasonable and proper assignment from an
    authorized supervisor; insubordination.

Board of Supervisors: Donald F. Gage, George Shirakawa, Dave Cortese, Ken Yeager, Liz Kniss
County Executive:  Jeffrey V. Smith

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 2 of 14

The facts which are the basis for these charges are:

On May 17, 2010, you were hired as a Facilities Maintenance Representative (FMR) in the Probation Department.  Your job duties were:

- Process, monitors, maintains records for a fleet of 160 vehicles to include;
- Monitoring Fleet mileage;
- Prepares mileage report for entry into Main fleet Odometer database;
- Schedules vehicles for preventative maintenance;
- Maintain inventory for vehicle safety equipment;
- Prepares Travel vehicle reservations;
- Processing of new vehicles;
- Processes vehicle accident reports;
- Orders/ Replaces gasoline credit cards;
- Orders/Replaces garage passes;
- Maintains /updates gas pump access;
- Maintains records on Vehicle Registration;
- Answers/researches questions for employees about fleet procedures;
- Inspects assigned facilities to determine needs and repairs and identifies safety hazards;
- Calls in service calla and prepares Work Orders;
- Process Safety Inspections ;
- Attends meetings;
- Cross train to work at all Probation sites for coverage;
- Participates in Fire, Health, and Environmental safety inspections.

Your overall performance in your assignment has been unsatisfactory.  You have failed to keep notes as instructed to refer to in order to complete your tasks and for tracking completion of your assignments.  You have failed to timely complete assignments.  You cannot complete a task without being shown step by step first and you are reluctant approaching contractors and Probation staff in order to complete an assignment.  You are resistant to following instructions provided by your direct supervisor if the instruction does not make sense to you.  You have taken no accountability but have instead stated that your supervisor is "hazing" you with an overload of work and trying to fire you.

As a new employee to Probation and promoting to the FMR position, Ms. Susana Alcantar who is your direct supervisor, wanted to ensure that you received the appropriate training, guidance, and support to ensure that you fulfill the duties assigned to you.  Her efforts included providing training on the following assignments;

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 3 of 14

- o    Vehicle Mileage Log Sheets;
- o    Phone Etiquette;
- o    Vehicle Reservations;
- o    Juvenile Facilities Inspections and facility issues;
- o    Lotus Notes email for requesting mileage from fleet users;
- o    Vehicle Mileage Report;
- o    Odometer Report for Facility and Fleet;
- o    Filing and Printing of Odometer Reports;
- o    Voice Communication service calls;
- o    Computer Magic Excel Class (July 23, 2010);
- o    Site Walks.

Additionally, she also provided to you support in the following manner;

- o    Ms. Alcantar meets with you on a bi-weekly basis to review the assignments with you and to receive any questions and feedback regarding the assignments.
- o    Ms. Alcantar is also available on a daily basis; she has an open door policy to provide answers to your questions as they arise.
- o    Ms. Alcantar provided you with job expectations and reviewed those expectations with you during the bi-weekly meetings.

On your first day of training May 18, 2010, while training you on the on the monthly odometer reports, Ms. Alcantar gave you the following instructions;

- o    Calculate the mileage manually;
- o    Provide Ms. Alcantar with a copy of the manual report monthly;
- o    Follow these instructions until further notice from Ms. Alcantar.

You failed to follow the instructions and instead performed the process your own way by entering them in the computer and failing to give a copy of the manual report each month to Ms. Alcantar. Ms. Alcantar specifically directed you to not enter the information into the computer. She asked you to not enter information directly in order to ensure you had a firm understanding of the process, were able to calculate the math, and were competent in excel computer program. Ms. Alcantar wanted to see if you would be able to identify any discrepancies in the report and to be able to correct them. She also pointed out that any incorrect mileage report to the Fleet department would not only cause them to charge the Probation Department incorrectly but also cause more work for the Fleet Department by having to correct the  cost and the incorrect mileage.

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 4 of 14

When Ms. Alcantar asked you to provide a copy of your work for her to evaluate, you said, "Can't you print your own copy?"

When Ms. Alcantar realized you had entered information directly into the computer; she informed you that you failed to follow instructions and she was unable to evaluate your work.  You became upset and went to your cubical. Your only reply was, "This way is faster."

On May 24, 2010, you demonstrated unprofessional conduct while helping Ms. Alcantar relocate heavy boxes from one workstation to another. While you were removing the boxes from the cart, Ms. Alcantar noticed that you were not using the proper lifting techniques to prevent injury. She said, "Watch your back," so that you would not get hurt as you were not lifting the boxes correctly. Your unprofessional response stated in a very stern voice to Ms. Alcantar was, "You better be careful with what you say, someone got in trouble saying that." Ms. Alcantar was startling by your reaction and comment. Your actions demonstrated that you were not receptive to courtesy advice from your supervisor.

On May 28, 2010, you participated in the walk through of the Annual Health Inspection and Ms. Alcantar instructed you to take notes. You said, "Why"?  Ms. Alcantar replied, "Because with these notes, it will help us start working on the deficiencies that the Fire Marshall is pointing out to us." You said," Well, he will give us a report at the end if the inspection and we can use that report." You have been resistant to take notes when your supervisor instructs you and failed to see that the note taking would assist you in completing a very important task.

On June 7, 2010, Ms. Alcantar instructed you to do a walk through with ACME Security at Juvenile Hall and she reminded you to take notes.   Ms. Alcantar also informed you where to meet the contractor. You stated, "I do not know who they are (ACME Security) or where to meet them." Ms. Alcantar reminded you that when she gave you a tour of the facility you stated to her that you were very familiar with the Juvenile Hall facility and knew your way around and gave the impression that you did not need a tour. Additionally, you were trained on how to do a walk through when you participated on May 28, 2010 in the Annual Health Inspection for the Juvenile Hall Facility. Because of your response to the directive Ms. Alcantar decided to bring you to the Juvenile Hall facility to meet the contractor.

With regard to the directive reminding you to take notes, you stated to Ms. Alcantar in a defiant and sarcastic voice "What is it you are looking for in the notes? It really does not mean anything." Ms. Alcantar reminded you of the importance of taking notes and was concerned that that type of reminder was needed. You have been resistant with your supervisor instructs you and have failed

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 5 of 14

to see that the note taking would assist you in remembering tasks and developing a necessary skill set. Between June 8, 2010 and July 14, 2010, Ms. Alcantar continued to meet with you frequently and to provide you with more training and re-training in the areas needed.

On July 15, 2010, Ms. Alcantar met with you to discuss her concerns about your work performance regarding errors she found on the mileage report. During the discussion it was apparent to Ms. Alcantar that you were negligent in the performance of your duties. As she started to review the errors on the mileage report and asked you why some of the mileages were not correct, you stated, "That is what they reported". Ms. Alcantar asked you if you looked at your notes on your training in regards to follow up and you stated, "No, I didn't".

You started to get very defensive and made the following comments to Ms. Alcantar:
- You are giving me too much work.
- You are talking down to me.
- You intimidate me.
- You do not let me finish talking.
- You need to stop bullying me.
- With all this work, it feels like a hazing ritual, I cannot handle the workload.
- You are not treating me with respect.
- You are always training me too fast.
- I am having a hard time with the computer.

Ms. Alcantar allowed you to vent your frustrations. Ms. Alcantar became concerned about your unprofessional behavior such as standing up, leaning toward her while she was sitting down, and yelling at her. Ms. Alcantar was uncomfortable continuing this meeting with you alone, and advised you that you needed to calm down and that she was going to get me. Furthermore, Ms. Alcantar felt that I needed to be present, because you felt you were not being treated fairly.

I was in a meeting, so Ms. Alcantar returned to the conference room and also to see if you had calmed down. Ms. Alcantar then notified you of your rights to file a complaint with the Equal Opportunity Officer if you felt you were being treated differently. She also assured you that the Probation Department did not practice hazing and that the County has Violence in the Workplace policy. She was concerned with your outburst and so she also notified you of the Employee Assistance Program (EAP) program in case you felt you needed it. At that point, Ms. Alcantar noticed your whole disposition seemed to change. You started to calm down and Ms. Alcantar and you talked for a little bit. You then stated, "Are we both fine?" Ms. Alcantar stated, "There is no

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 6 of 14

issue with me, I am here to train you and give you the tools necessary to do your job. The assignments that I am giving you are all for the position that you are in and it was explained to you in both your first and second interview to ensure you understood the responsibilities of the Facilities Maintenance Representative position for the Probation Department."

On July 23, 2010, Ms. Alcantar talked to you about the fact that you did not follow instructions to learn about the various units that have assigned vehicles. Previously, on June 3, 2010, she provided you with the department's Annual Report so that you could learn about the various units in the department, in order to handle the vehicle rotation properly. After receiving the annual report you stated, "Thank you". However, it was apparent to Ms. Alcantar that you did not read the information, because you did not understand what type of vehicles are needed for specific units and you did not complete this task by reading through the report. You were given until June 18, 2010, to finish. You did not read and return the report by June 18, 2010.

On July 23, 2010, Ms. Alcantar asked you to return the copy of the report. She asked you if you had completed reading the report and you answered "I glanced at it." When she asked you to return it, you had to look for it first and then returned it to her.

On August 20, 2010, Ms. Alcantar instructed you to meet with the Fleet Users to determine what the vehicle needs were and complete a report. She reminded you to meet with the vehicle users on three occasions. On each occasion you stated you wanted her to show you what to do, as you were having a hard time accomplishing this task. She explained to you needed to contact the Fleet Users, set a meeting and inquire as to what the needs were. She provided that direction on each of the three occasions. Based on your previous experience with Facility & Fleet (FAF), and the need to provide good customer service, as well as the training she had already provided you, her expectation was that you would easily be able to complete this assignment as directed.

Ms. Alcantar met with you again on September 13, 2010, and you had failed to complete this assignment. You were given additional time to complete the report by one week to September 20, 2010.

You failed to complete the task and did not turn in the report by September 20, 2010. You failed to notify Ms. Alcantar that you were unable to complete the assignment. Ms. Alcantar asked you for the report on September 23, 2010, you told her that you had started that day to make interview appointments with the fleet users for September 23, 2010. Ms. Alcantar gave you one more extension to see if you could complete this assignment. Ms. Alcantar gave you until October 1, 2010, to finish this assignment as the date for vehicle rotation was October 25, 2010, and this information

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 7 of 14

would be used as a critical tool for the vehicle rotation. You failed to complete the assignment on October 1, 2010, and you failed to notify Ms. Alcantar that you were again unable to complete the assignment.

You turned in an incomplete assignment on October 4, 2010. Out of the 49 users, you interviewed only 23, which were able to give their input on vehicle needs for their unit. Your failure to interview all the fleet users will result in the users not receiving the appropriate vehicles for their needs during the vehicle rotation process. You were resistant to following instructions provided by your supervisor when you failed to meet with the Fleet Users and negligent when you failed to determine their vehicle needs in a reasonable time frame.

In your initial job interview on April 6, 2010, you stated that you knew computer programs very well. You had worked with Microsoft programs, including Excel, however, it was clear that you were struggling to perform minor entries, and so Ms. Alcantar requested that you attend a class on Excel. She also removed you from handling facility assignments on July 21, 2010, to see if there was at least improvement in the fleet aspect of your job. You thanked her and attended the Excel class on July 23, 2010. As of the writing of this letter there is still no improvement in your performance.

On August 23, 2010, you were negligent in the performance of your duties when you failed to follow proper email etiquette. You had received an email from FAF regarding a situation involving a Probation employee. You inappropriately forwarded that email to the employee. On August 20, 2010, Ms. Alcantar discussed with you similar situations and she informed you that it is your responsibility to review the email and restate the complaint as though it was coming from you as the Probation Department liaison, and to never forward the email thread. On August 23, 2010, Ms. Alcantar received notification from FAF that the involved employee contacted the Fleet Department. The Fleet Department was upset that the Probation employee contacted them directly. Your actions jeopardized our relationship with FAF involving resolving matters with employees. Ms. Alcantar called you into her office to let you know again that your actions were inappropriate as this was the second time that you did not follow the email etiquette training instructions. Your excuse was, "I thought I would let them get the gist of the email."

On August 25, 2010, Ms. Alcantar asked you to assist Supervising Probation Officer (SPO), Raul Torres in getting him a gas card. She sent the email to you and expected you to check our inventory first as trained. Rather than following your supervisor's instructions, you ordered a new gas card when it was not necessary. You did not follow the appropriate procedure or your supervisor's instructions.

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 8 of 14

On August 27, 2010, you did not understand an email that was sent to you by an SPO regarding a bad smell coming from the inside of his vehicle. You were not sure how to respond back to him, so you sent him to the car wash. You failed to ask Ms. Alcantar for further guidance as instructed to when you are not sure what to do. The SPO came to Ms. Alcantar and complained that you did not understand his email. The SPO was flustered because he knew this would not work. The steps that you should have taken were as follows;

- o   Communicate with the SPO on the condition of the vehicle;
- o   If it is determined that the vehicle needs more attention than a generic car wash, you are to contact the Fleet Department so that they can make an appointment to take the vehicle to Elmwood to have the inmates deep clean and detail the vehicle.

Once Ms. Alcantar laid out the ground work, she instructed you via email to complete this request. This once again demonstrated that you do not understand the detailed work that is required to provide good customer service. When questioned, you stated, "I assumed that he should just take it to the car wash." Your response indicates that you are being inconsiderate and wasting staff's time by providing them with wrong information and not taking the time to research their needs appropriately.

As a means to ensure your success in the FMR position, Ms. Alcantar met with you frequently to review your work assignments.

On September 13, 2010, at your review meeting, Ms. Alcantar informed you that your probationary period ends on November 15, 2010, and that based on your poor performance you need to improve 100% in several areas.  On your review date you should have the skills and abilities to carry out your full duties as a Facility Maintenance Representative which include:

- o   Place work orders electronically;
- o   Be generally supervised without Ms. Alcantar having to follow up on each task assigned to you;
- o   Research questions before giving answers to requestors;
- o   Take initiative to walk the building daily and to look at not only building fixtures, but also safety issues that the building might have;
- o   Follow-up on outstanding assignments until they are complete;
- o   Handle specific assignments, such as talking with the Fleet Users regarding their needs for vehicles in their units. Although you requested Ms. Alcantar's assistance to meet with the Fleet Users, you were expected to perform this assignment

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 9 of 14

          without Ms. Alcantar's assistance due to the time spent in your current
          assignment.

o    Be assertive and professional in carrying out your duties;

o    Be able to complete the Vehicle Rotation assignments.

o    Follow supervisor's instructions and directives.

After reviewing the above information with you and letting you know the areas you need to improve, Ms. Alcantar asked if you had any questions and you stated, "I will work on that. Thank you for letting me know."

On September 20, 2010, Ms. Alcantar sent you an email with instructions for you to create a highest to lowest mileage report for the upcoming vehicle rotation. You were to prepare a mileage report showing the highest mileage to the lowest mileage median. The information was already available to you in an existing database. You went to Ms. Alcantar's office because you were not sure how to do it. Ms. Alcantar gave you further verbal instructions and even showed you how the report should look from your master vehicle report. You stated" oh, ok". You turned in your first attempt at the report on September 21, 2010, and showed her a one page report that was not correct. Ms.Alcantar again showed you how the report should be formatted from October 2009 to September 2010. You went back to your cube and returned again with another version of the report that looked the same as the one you had shown her earlier. You came back to Ms. Alcantar's office with a third copy of the report on September 21, 2010. Ms. Alcantar was on the phone and you came in placed the one page report on her desk. She looked up nodded and you left. Ms. Alcantar waited for you to come back, but you did not return to ask about the report until 4:55pm - five minutes before the end of your shift. You asked Ms Alcantar, "How is the report?" Ms. Alcantar replied, "It is not correct". You said 'Oh" and left. On September 23, 2010, you came in and asked for more instructions and if she could give you a visual of the report. Ms. Alcantar again showed you the report format, the time line base and even sent you another email on September 29, 2010, to extend your deadline to complete this project to October 4, 2010 since you were clearly having difficulty. On October 1, 2010 you asked for another extension of time to complete the project. Ms. Alcantar in an effort to assist provided you a final deadline of October 7, 2008. You failed to complete the report or notify your supervisor that you could not meet this deadline on time and did not turn in the report until October 8, 2010.

On September 27, 2010, Ms. Alcantar again called you into her office to let you know that your work performance was still not meeting standard. She then advised you that she would be setting up a meeting with you to let you know the status of your employment here in the Probation Department. You said "I am unaware of any missed assignments, could you give me a list?" Ms. Alcantar directed you to review your notes, as you were to record each assignment given to you

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 10 of 14

and you would be able to determine any outstanding assignments from your own notes.   You stated, "I did not get an employee evaluation from you." You stated you were not aware of any missed work assignments. You also asked Ms. Alcantar if your prior position at FAF was open. Ms. Alcantar stated that she did not know, and you stated, "Okay."

On September 29, 2010, you contacted me to request a meeting, as you stated "Susie is out get me and wants me to quit my job". The same day, you also contacted Delores Nnam, Executive Administrative Services Manager, and made the same statement. Ms. Nnam informed you that a meeting between you and I needed to take place first. You stated to Ms. Nnam that you had met with me in the past and that nothing was done about Ms. Alcantar. However, I was unaware of any complaint and your e-mail to Ms. Nnam and I were only minutes apart. Ms. Nnam informed you that a meeting would take place with me and, if necessary, a joint meeting with Ms. Alcantar. On September 30, 2010, I met with you and your representative Patricia McClure. During the meeting you informed me that you felt working with Ms. Alcantar was difficult and that you felt she was "out to get you and to make you quit your job." Your concerns were that Ms. Alcantar does not listen to your suggestions and wants you to perform the job duties exactly they way she trained you. You felt that she should listen to your suggestions and allow you to perform the duties according to your preference.

After meeting with you, I investigated your concerns. After learning of Ms. Alcantar's on-going concerns about your work performance, I am unable to substantiate your complaints as they are unfounded. Ms. Alcantar has treated you with dignity and respect and rightly so, requested that you perform your assigned duties based on the training you received. Ms. Alcantar's expectation was for you to learn the job duties and perform them well before making recommendations on how to improve. Ms. Alcantar provided information that clearly indicates you were reluctant to follow her directives.

On October 19, 2010, Ms .Alcantar called you into her office to ask you why you changed the format of the Master Vehicle Log and the title. While in training of the Master Vehicle Log, Ms. Alcantar instructed you not to change the format for any reason until she was sure you understood the report and how to work in Excel or until further notice. You did not follow these instructions.

When Ms. Alcantar asked you, you told her that you did not change the format and then changed your story by stating" I changed it a little bit". Ms. Alcantar told you that the grey history was missing from each unit and that this information needed to be with the unit and not on the back page of the report. The units were also not in the same order. Your response to Ms. Alcantar was "I assumed it would help you. I am sorry and will not assume again. I guess that is what gets me in trouble". Ms. Alcantar notified you that you again failed to follow your supervisor's instructions

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 11 of 14

and that your organizational skills have not improved at all.

On the same day, you were also not prepared when Ms. Alcantar asked you for the Garage Pass Inventory paperwork. She gave the paperwork you so that you could check the inventory before the date of the vehicle rotation, which would be October 25, 2010. You had not started working on this project and did not know where you placed the paperwork. Ms.Alcantar needed the paperwork to answer some questions for the Deputy Chief. (DCPO) Ms. Alcantar had asked the DCPO if it was alright to place her on hold so that she could get the paperwork from you. Ms. Alcantar had to go back to her office and tell the DCPO that she was sorry it was taking so long. The DCPO advised Ms. Alcantar that she needed to respond back by 10 minutes so that she could respond back to the party asking the questions. It took you 20 minutes or more to find the necessary documents. You left us in bad standing as it looked like we were not organized and failed to respond in a timely manner.

Outstanding assignments that you are behind in as of October 19, 2010 are;

Fleet Inventory for September and October has not been completed.
Deadline is the same due date as your Monthly Mileage. This is needed for a report that your supervisor turns in to OSEC and is due the last week of the month. Your incompletion of the Fleet Inventory Reports will cause these reports to be submitted late.

You tried four times to get the high to low median report completed. Finally, your supervisor had to do it for you and asked another staff person to assist. This caused your supervisor to move the date for the fleet rotation project that affects the whole Department, to sometime in November instead of the original date of October 25, 2010.

Conclusion

Since your arrival in this position on May 17, 2010, Ms. Alcantar provided a great deal of training and also retrained you in several aspects of your position.

Retraining Efforts
Beginning July 23, 2010 to the present Ms. Alcantar has continuously retrained you on your job assignments, including;

- Retrained on the Mileage Report.
- Retrained Mileage Logs.
- Filing and Printing of Odometer Reports.

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 12 of 14

- ○ Facility Issues.
- ○ Voice Communication service calls.
- ○ Retrained Odometer Report for Facility and Fleet.
- ○ Refresher on site walks

You have been trained and retrained in all aspects of facilities and fleet and your assignments are always behind. Your lack of skills is reflected in your failure to complete your work assignments. Because of your inability to accept directives, instructions, and constructive criticism from your supervisor, the Facilities and Fleet Unit and its ability to serve its internal and external customers has been severely diminished. You were hired to add value and enhance our services; however your actions have caused unnecessary hardships on your co-workers and management. You have been given every opportunity to improve your work performance. However you continue to perform poorly in this position. Your negligent and unprofessional conduct is unacceptable and will not be tolerated by this department.

Therefore, I am recommending that you be released from the Facility Maintenance Representative position. Your release date is effective at the end of your shift on November 12, 2010.

## Right to Administrative Review

In accordance with Article 6, Section 6.1(b) of the SEIU Local 521 Memorandum of Agreement, you have the right to request and receive an administrative review of this action. You must request the review in writing within ten (10) working days from the date of the disciplinary action or it is waived. Your request for the administrative review must be submitted to:

Delores Nnam, Administrative Review Officer
Santa Clara County Probation Department
2314 North First Street
San Jose, CA 95131.

You may be assisted in your response or presentation, whether oral or written, by a representative of your choice. Your Union Representative is KC Snodgrass. He can be reached at 678-3300.

## Right to Appeal

Should you be dissatisfied with the probationary release, in accordance with Article 6, Section 6.1 of the Memorandum of Agreement, you have the right to appeal this action to the Personnel Board.

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 13 of 14

Your appeal rights are provided under the County of Santa Clara Charter, Section 708(c):

"The employee shall have ten working days from receipt of such written
notice within which to file an answer to the statement of charges should the
employee desire to do so, and the filing of such an answer shall be deemed
to be an automatic request for a hearing unless such employee otherwise
indicates. The answer to such charges shall be filed with the Personnel Board."

Should you choose to appeal the decision you must send a written notice to:

Libby Spector, Chairperson
Personnel Board, c/o Clerk of the Board
70 West Hedding Street, 10th Floor East Wing
San Jose, CA 95110

The written notice must be filed with the Personnel Board within ten (10) working days of
your receipt of this decision.

You have the right to be represented in your appeal by your union representative, or another
representative of your choice. You can contact your SEIU Union Representative by speaking
with your Steward or by calling (408) 678-3300.

You have the right to written materials on which the probationary release is based. For your
convenience, the materials have been attached to this document.

Right to Return to Former Classification

You have the right to return to your former classification in which you held permanent status under
Article 6, Section 6.9 of the Memorandum of Understanding. If you elect to return to your former
classification, you must contact Lisa Dumanowski, at the Office of Labor Relations immediately at
(408) 299-5820 to check if a position is available.

Notice of Probationary Release: Michel Hermange
11/2/2010
Page 14 of 14

Sincerely,

*Vickie Gorley by Carolyn Joe*

Vickie Gorley
Management Analysis Program Manager II

Attachments:

c:      Susana Alcantar, Program Manager
        Delores Nnam, Exec. ASM, Administrative Review Officer
        Sheila E. Mitchell, Chief Probation Officer
        Lisa Dumanowski, Labor Relations Representative
        KC Snodgrass, SEIU Local 521 Contract Enforcement Director
        Patricia McClure, Chief Steward, SEIU, PCW
        Personnel Board, c/o Clerk of the Board
        Department Personnel File
        SCCO Personnel File



RECEIVED

MAY 1 5 2012

OFFICE OF LABOR RELATIONS
COUNTY OF SANTA CLARA

County of Santa Clara, Personnel Board
**PROOF OF SERVICE BY MAIL**

I, Martha Jurick, declare:

I am a citizen of the United States and employed in the County of Santa Clara; I am over the age of eighteen years and not a party to the within entitled action; my business address is:

County of Santa Clara
Office of the Clerk of the Board of Supervisors
70 West Hedding Street, 10th Floor, East Wing
San Jose, California 95110

On May 15, 2012, I cause to be served the following documents:

**FINDINGS OF FACT AND CONCLUSION FOLLOWING HEARING BEFORE THE PERSONNEL BOARD**
on the party in this action, by placing a true copy thereof in a sealed envelope (s), addressed as follows:

Mike Hermange
3552 Clayton Road
San Jose, CA 95127

Lisa Dumanowski
Labor Relations Representative
8th Floor, 70 W. Hedding Street
San Jose, CA 95110

By Certified and First Class Mail, I mailed such envelope(s), with postage thereon fully prepaid, in the United States mail to be mail by First Class mail at San Jose, California.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct and that this declaration was executed on May 15, 2012, at San Jose, California.

*Martha Jurick*
Martha Jurick
Deputy Clerk of the Board



EXHIBIT
# 9
DEPT
HERMANGE

Lisa Dumanowski, Labor Relations Representative
Employee Services Agency
Office of Labor Relations
70 West Hedding, East Wing, 8th floor
San Jose, California, 95110-1770
Telephone: (408) 299-5882
Facsimile: (408) 286-4813

## SANTA CLARA COUNTY
## PERSONNEL BOARD
## PROBATIONARY RELEASE WITH UNDERLYING PERMANENT STATUS HEARING

Re the Matter of:
Mike Hermange
D 10-132-521-089

### FINDINGS OF FACT

This matter was presented at a hearing before the Santa Clara County Personnel Board on Friday, April 8, 2011. The Board, consisting of Chairperson Libby Spector, Denis O'Neal, Steven Cushing, Martin Alvarez and William Anderson, were present to hear the appeal. Appearing on behalf of the County was Vicky Gorley, Administrative Resource Unit Manager and Lisa Dumanowski, Labor Relations Representative. The Appellant, Mike Hermange, was represented by Kimberly Gomez, Contract Enforcement Specialist, SEIU Local 521.

Consistent with its common custom and practice, the following findings and conclusions have been submitted and are hereby prepared by the prevailing party and are hereby adopted by the Board:

1.     Mr. Mike Hermange was appointed in the County of Santa Clara Facilities Department on August 14, 2006 as a General Maintenance Mechanic and

subsequently promoted to a Facilities Maintenance Representative in the

Probation Department on May 17, 2010.

2.   On November 12, 2010, Mr. Hermange was released from his probationary

position for conduct that violated the Merit System Rules,  Article 11:

>   Section A25-301 (a) (2) "Inefficiency, incompetency, or negligence in the
>   performance of duties, including failure to perform assigned task or failure to
>   discharge duties in a prompt, competent and responsible manner."
>
>   Section A25-301(a) (5)"Refusal to accept a reasonable and proper assignment
>   from an authorized supervisor; insubordination. "

4.   The probationary release arose from Mr. Hermange's failure to discharge his

duties as a Facilities Maintenance Representative in a prompt, competent manner

and exhibited unharmonious behavior with his supervisor, Susie Alcantar.

5.   Pursuant to the Charter of the County of Santa Clara Section 708 (c), a timely

appeal of his suspension was filed with the Personnel Board.

6.   The parties presented testimony and documentary evidence regarding the

probationary release of Mr. Hermange.

>   A.  The County argued that Mr. Hermange failed to complete and submit
>
>   reports in a timely manner, made multiple errors on such reports, was not
>
>   up to date on his filing and complained filing was unnecessary and should
>
>   be done less frequently.  The County further argued that when Mr.
>
>   Hermange's supervisor, Susie Alcantar, addressed his work performance,
>
>   he became angry and beligerent.

2

B.  Ms. Gomez argued that the County did not offer sufficient evidence to

substantiate the violations of the Merit System Rules, Article 11, Section

A 25-301 (a)(2), and  Section A 25-301 (a)(5).

Ms. Gomez asserted that Mr. Hermange was not properly trained by his

supervisor.  Ms. Gomez also asserted that Mr. Hermange was competently

performing his duties.  Ms. Gomez argued that the County could not

sustain "Brutality in the performance of duties" and that Mr. Hermange

did not pound his hands on the table or lean over Ms. Alcantar.  Ms.

Gomez argued Mr. Hermange had become emotional discussing his work

performance because he was being bullied by his supervisor.

## CONCLUSION

The Board announced its decision on April 8, 2011 based upon both the documentary

evidence and testimony submitted at the hearing. In a 3-2 decision, the Board upheld the

probationary release.  The Board did find for violations of Santa Clara County Merit

System Rules Section A25-301 (a)(2) - Inefficiency, incompetence, or negligence in the

performance of duties, including failure to perform assigned task or failure to discharge

duties in a prompt, competent and responsible manner. The Board did not find sufficient

evidence to sustain violation of the Merit System Rule, Article 11, Section A25-301(a)(5)

– Brutality in the performance of duties.

## FURTHER ACTION

The Personnel Board hereby advises Appellant, Mike Hermange, that he may seek judicial review of this Board decision by filing a writ of mandate pursuant to California Code of Civil Procedure Section 1094.5. The writ must be filed with a court of competent jurisdiction no later than 90th day following the date on which the Board decision becomes final (California Code of Civil Procedure section 1094.6). The Board decision becomes final when it is mailed by first-class mail, postage prepaid, including a copy of a certificate of mailing to the party seeking any such writ.

Dated: 5-11-2012

LIBBY SPECTOR, CHAIRPERSON
Santa Clara County Personnel Board

4