1

2

3                    **UNITED STATES DISTRICT COURT**

4                   **NORTHERN DISTRICT OF CALIFORNIA**

5                          **SAN JOSE DIVISION**

6

7    MICHEL HERMANGE,                        Case No.  16-cv-02847-BLF

8                    Plaintiff,

9           v.                              **ORDER GRANTING DEFENDANT'S
                                            MOTION FOR SUMMARY
10   COUNTY OF SANTA CLARA,                 JUDGMENT**

11                   Defendant.             [Re: ECF 28]

12

13          Plaintiff Michael Hermange, proceeding here *pro se*, was promoted to Facilities

14   Maintenance Representative in Defendant County of Santa Clara's Probation Department subject

15   to his successful completion of a six month probationary period.  At the end of the probationary

16   period, Plaintiff was released.  Plaintiff, who is Caucasian, contends that his release was the result

17   of unlawful race discrimination, spearheaded by his direct manager Susana Alcantar, who is

18   Hispanic.  Defendant disputes this claim, arguing that Plaintiff did not competently perform his

19   job duties.

20          Now before the Court is Defendant's motion for summary judgment on Plaintiff's sole

21   claim for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,

22   *et seq.  See generally* Mot., ECF 28.  The Court has considered the briefing, the admissible

23   evidence, and the argument presented at the hearing on February 21, 2019.  For the reasons

24   discussed below, Defendant's motion is GRANTED.

25

26

27

28

I.   **UNDISPUTED FACTS**[1]

A.   **Plaintiff's Employment at the County Probation Department**

Plaintiff Michael Hermange has worked for Defendant County of Santa Clara since August 2006, when he began work as a General Maintenance Mechanic.  Capozzi Decl., Ex. A, Ex. 5, ECF 28-1.  In April 2010, Plaintiff applied for a promotion to become a Facilities Maintenance Representative ("FMR") in the County's Probation Department.  *Id.*  He was interviewed by Susana Alcantar, a program manager with the Probation Department, who became Plaintiff's primary supervisor when he eventually was employed as an FMR.  Hermange Decl. ISO MSJ Opp. at ¶ 2, ECF 32; Alcantar Decl. ISO MSJ ¶¶ 3–5, ECF 28-2.  Ms. Alcantar is Hispanic.  Hermange Decl., Ex. 226 at 2.  His second interview was with four managers from the Probation Department—Ms. Alcantar, Vickie Gorley, Carolyn Joe, and Ted Bond.  *Id.*

Plaintiff was hired as an FMR on May 17, 2010.  Capozzi Decl., Ex. A, Ex. 7.  Pursuant to County ordinances, Plaintiff was required to successfully complete a six month probationary term before being hired on a permanent basis.  *See* Santa Clara County, Cal. Ordinance Code § A25-191; *see also* Capozzi Decl., Ex. A at 70:24–71:2.  If Plaintiff did not perform successfully during this probationary period, he would be subject to release from the new position and would return to his previous position and grade.  *Id.*, Ex. A, Ex. 7 at 12–13.

In his role as FMR, Plaintiff helped to maintain, properly equip, and regularly service the Probation Department's fleet of over 150 vehicles, which are used to transport probation officers, clients, youth offenders, and arrestees.  Alcantar Decl. ¶ 4.  Plaintiff's duties included "scheduling and coordinating with different units to monitor vehicle usage and required maintenance; maintaining an inventory of vehicle items such as gas cards, garage passes, first-aid kits, spare tires, etc.; maintaining mileage records and reporting mileage to the Facilities and Fleet Department; reserving special vehicles for out of county trips for Department use; processing service calls for facilities, and appointments for county vehicle maintenance; assisting and correcting deficiencies cited in health and fire inspections; and maintaining the Probation Department buildings and facilities" and "turning in a monthly trend report which is a summary of

---

[1] The facts set forth in this section are undisputed unless otherwise noted.

United States District Court
Northern District of California

his monthly activities." *Id.*; *see also* Hermange Decl., Ex. 232.  Plaintiff was trained on these duties by Ms. Alcantar.  *Id.* ¶¶ 3–5.

Over the course of the next six months, Plaintiff and Ms. Alcantar's relationship was tumultuous, to say the least.  As described in greater detail below, Ms. Alcantar believes that Plaintiff consistently underperformed in his job duties, including turning in incomplete and incorrect assignments, turning in assignments late, needing to be retrained on simple tasks, failing to follow explicit directions on how to complete tasks, attempting shortcuts to perform tasks in a way he believed was more efficient, and resisting Ms. Alcantar's instructions.  *See generally* Alcantar Decl.  Vickie Gorley, Ms. Alcantar's direct supervisor, attended bi-weekly performance review meetings with Plaintiff and Ms. Alcantar.  She supports Ms. Alcantar's conclusions that Plaintiff was not performing his job duties successfully.  *See generally* Gorley Decl. ISO MSJ, ECF. 28-3.  Ms. Gorley is Caucasian.  Hermange Decl. ¶ 14.  Moreover, Ms. Alcantar does not believe Plaintiff had a good attitude, calling him "uncooperative," "obstinate," and "routinely abrasive" and recounting occasions on which Plaintiff became "very angry."  Alcantar Decl. ¶¶ 13–15.

Plaintiff refutes these claims.  He says he was "fully capable of doing all [his] job duties and assignments as evidenced by the bi-weekly reviews which indicated no problems" and that he met all of his assigned deadlines.  Hermange Decl. ¶ 7; Hermange Decl., Ex. 222; Opp. at 9.  He testifies he was doing extra work, but that he was able to perform all of his tasks in a timely and complete fashion and without the need to be retrained.  Hermange Decl., Ex. 200 ("Hermange Depo.") at 67: 3–9, ECF 32-1; Hermange Decl. ¶ 9, Ex. 232.  He also claims that Ms. Alcantar is a racist, who never wanted to hire him and never planned to keep him past his probationary period.  *See generally* Opp.  He claims that she mistreated him, was aggressive toward him, baselessly found fault in everything he did, singled him out to perform humiliating tasks and to not receive certain benefits, and manufactured his alleged incompetence in order to get rid of him.  *See generally* Opp.; Hermange Decl.; *see also* Hermange Depo. at 11:17–12:5.

### B.   Release and Post-Release Proceedings

After his probationary period, Plaintiff was released—that is, he was not awarded

1   permanent status and was returned to his previous position.  On November 2, 2010, the

2   Department sent Plaintiff a letter notifying him of his release.  *See* Capozzi Decl., Ex. A, Ex 7.

3          In April 2011, the Santa Clara County Personnel Board upheld Plaintiff's probationary

4   release in a 3–2 decision.  *See* Capozzi Decl., Ex. A, Ex 9.  The Board found that Plaintiff had

5   violated Santa Clara County Merit System Rules Section A25-301 (a)(2) for "[i]nefficiency,

6   incompetence, or negligence in the performance of duties, including failure to perform assigned

7   task or failure to discharge duties in a prompt, competent and responsible manner."  *Id.*  The Board

8   did not find sufficient evidence to sustain a violation of the Merit System Rule, Article 11, Section

9   A25-301(a)(5) for "[b]rutality in the performance of duties."

10         On July 26, 2011, Plaintiff filed a Charge of Discrimination with the Equal Employment

11  Opportunity Commission, and he received a Dismissal and Notice of Rights on February 26, 2016.

12  Capozzi Decl., Ex. A, Exs. 2 & 3.  In his Charge of Discrimination, Plaintiff claimed that Ms.

13  Alcantar is a racist and that he believes he has been discriminated against based on his race.  *Id.* at

14  Ex. A, Ex. 2.

15         **C.    Procedural History**

16         On May 26, 2016, Plaintiff filed his Complaint in this action, alleging a single cause of

17  action for discrimination based on race pursuant to Title VII of the Civil Rights Act of 1964, 42

18  U.S.C. § 2000e-5.  *See* Compl., ECF 1.  Specifically, Plaintiff alleges that Ms. Alcantar "hates

19  white people" and that she manufactured the alleged deficiencies in Plaintiff's performance.  *See*

20  Compl. ¶¶ 5a–b.  He claims that he was released because he is Caucasian.

21  **II.    EVIDENTIARY OBJECTIONS**

22         Under Federal Rule of Civil Procedure 56(c), a party can object to an opposing party's

23  declarations and evidentiary material if it is not in a form that "would be admissible in evidence."

24  Defendant objects to much of Plaintiff's evidence.  *See* Reply at 5–8, ECF 35.  The Court

25  discusses each objection in turn.

26         **1.   Hermange Decl. ¶ 3: Statements by Ted Bond**

27         Plaintiff declares, in relevant part:

28         I was later greeted by Ted Bond who expressed his concerned [sic] that I would not

4

be treated fairly since Ms. Alcantar had not wanted to hire me.  Mr. Bond shared that Ms. Alcantar said she did not like me and wanted to keep looking for another candidate. Ms. Alcantar had been told by Ms. Gorley that since I was fully qualified and the only applicant, she had to give me a chance or it would be discrimination. Ms. Alcantar replied "I can tell you right now he is not going to work out". Mr. Bond told me to be careful because Ms. Alcantar does not like white people and will try to find an excuse to get rid of me.

Defendant objects to all of these statements as inadmissible hearsay under Federal Rule of Evidence ("FRE") 802, and objects to the statements that Ms. Alcantar "does not like white people" and would "try to find an excuse to get rid of [Plaintiff]" as lacking foundation under FRE 602 or inadmissible opinion testimony under FRE 701.

Ruling:  SUSTAINED.  The recounted statements by Mr. Bond are hearsay introduced to prove the matter asserted, namely that Ms. Alcantar did not want to work with Plaintiff and aimed to terminate him because of his race.  These statements are not subject to any valid hearsay exception.  At the hearing, Plaintiff informed the Court that Mr. Bond is unwilling to testify in this case, *see* Tr. At 4:2–18, ECF 41, thus the evidence would not be admissible at trial.  Moreover, Mr. Bond's statement that Ms. Alcantar does not like white people lacks foundation and is speculative because Mr. Bond's opinion is not supported by any proffered facts.

### 2.  Hermange Decl. ¶ 4:  Statements by Carolyn Joe

Plaintiff declares, in relevant part:

Ms. [Carolyn] Joe said to me she needs to warn me that Ms. Alcantar is a racist and hates white people. Ms. Joe told me to watch out since Ms. Alcantar did not want me working for her and will most likely try to get rid of me. Ms. Joe suggested I document all my work and keep detailed notes. Ms. Joe informed me that Ms. Alcantar got rid of Christine Leonard, the woman previously doing my duties, who was also white.

Defendant objects to all of these statements as inadmissible hearsay under FRE 802, as lacking foundation under FRE 602, and as inadmissible opinion testimony under FRE 701.

Ruling:  SUSTAINED.  The recounted statements by Ms. Joe are hearsay introduced to prove the matter asserted, namely that Ms. Alcantar was a racist, did not want to work with Plaintiff, and fired the previous white employee.  At the hearing, Plaintiff informed the Court that Ms. Joe is unwilling to testify in this case, *see* Tr. at 4:2–18, thus the evidence would not be admissible at trial.  Moreover, Ms. Joe's statement that Ms. Alcantar is a racist and would try to get rid of Plaintiff lacks foundation and is speculative because Ms. Joe's opinion is not supported

by any proffered facts.

**3. Hermange Decl. ¶ 7: Statements re: job responsibilities and performance**

Plaintiff declares, in relevant part:

JPD and Juvenile Hall are a full-time job for one person, but I was doing that job on top of the Fleet Scheduling and Facilities at APD that I had been hired for. I did the job of two people for the majority of the six months I work [sic] for probation. I received praise from many of the staff at both JPD Juvenile Hall and APD for the taking care of issues quickly and for my knowledge of the Building Systems.

Defendant objects that these statements lack foundation under FRE 602.

Ruling: SUSTAINED. Plaintiff's opinion that he did the work of two people lacks foundation, and his statement that he received praise from staff at JPD and APD is inadmissible hearsay if offered to prove that his job performance was adequate.

**4. Hermange Decl. ¶ 8[2]: Statements re: job responsibilities**

Plaintiff declares, in relevant part:

These reports also show I was doing the job of two people because I was covering the FMR duties for the Juvenile Probation Department (JPD) and the Adult Probation Department (APD). I was performing the duties of Marilyn Rawlings at JPD because Ms. Rawlings had been gone since I started on May 17, 2010. It took three people to cover for me when I left.

Defendant objects that these statements lack foundation under FRE 701.

Ruling: SUSTAINED. Plaintiff's opinion that he did the work of two people lacks foundation. Moreover, his statement that it took three people to cover for him when he left lacks foundation because he does not have personal knowledge as to what occurred at his former employment after he was released.

**5. Hermange Decl. ¶ 14: Statement re standard procedure for probationary release**

Plaintiff declares:

The way in which my Probationary Release was handled was not standard procedure. First, Sheila Mitchell, the Chief of Probation, came to my cube to introduced [sic] herself and said she wanted to meet me in person before she approved the release that Delores Nnam and Ms. Alcantar requested. Ms. Alcantar and Ms. Nnam prepared the release in Vickie Gorley's, the white manager, name. Ms. Gorley had been on leave starting soon after I met with her regarding my mistreatment and harassment by Ms Alcantar and did not return until after I was served the release. Ms. Nnam had Ms. Joe sign the release in Ms. Gorley's absence.

---

[2] Defendant objects to ¶ 9, but the objections clearly apply to the content in ¶ 8.

1    Defendant objects that these statements are speculative and should be excluded under FRE

2    602.

3    Ruling: SUSTAINED.  Plaintiff does not have personal knowledge of the standard

4    procedure for handling probationary releases.  Although he recounts how his release was handled,

5    he has no basis for his opinion that it was irregular.  Also, he has no personal knowledge of what

6    other individuals did outside his presence.

7    **6.   Hermange Decl. ¶ 16: Statements by Kimberly Gomez**

8    Plaintiff declares, in relevant part: "Kimberly Gomez, from SEIU Local 521, investigated

9    and came to the conclusion there was no evidence to support the release."

10   Defendant objects that this statement is inadmissible hearsay under FRE 802 and lacks

11   foundation under FRE 602.

12   Ruling: SUSTAINED.  The statement includes inadmissible hearsay to the extent Plaintiff

13   seeks to introduce Ms. Gomez's conclusion for the truth of the matter asserted.  Ms. Gomez's

14   conclusion is not an opposing party's statement under FRE 801 because she works for the union,

15   not the County.  Moreover, Plaintiff does not say how he has personal knowledge of Ms. Gomez's

16   conclusion.

17   **7.   Hermange Decl. ¶ 17: Statements by Lisa Dumanowski**

18   Plaintiff declares, in relevant part: "Ms. [Lisa] Dumanowski contacted Ms. Gomez and

19   illegally tried to prevent her from representing me by claiming I had anger issues and Ms. Gomez

20   should not represent me."

21   Defendant objects that these statements are inadmissible hearsay under FRE 802 and lack

22   foundation under FRE 602.

23   Ruling: SUSTAINED.  The statements lack foundation because Plaintiff has not

24   demonstrated how he has personal knowledge of these actions.

25   **8.   Hermange Decl. ¶ 18: Statements re: the Personnel Board's opinions**

26   Plaintiff declares, in relevant part: "Despite the lack of evidence on the County's part, the

27   Personnel Board voted 3–2 to uphold the release with the three county employees voting for, in

28   my opinion based solely on Ms. Alcantar's false claims of rage, and the two independent members

United States District Court
Northern District of California

7

voting against.  The independent members later told me the release was without merit and it was obvious there was some other reason I was released."

Defendant objects that Plaintiff's assertions as to how and why the members of the Personnel Board decided his case are speculative and lacking foundation under FRE 602.

Ruling:  SUSTAINED.  Plaintiff's statements are mere speculation as to why the members of the Board upheld his release.

### 9.   Hermange Decl. ¶ 19:  Statements by Mr. Bond

Plaintiff declares, in relevant part: "Several months later, I attended a retirement party for Mr. Bond at the James Ranch facility, where Mr. Bond stated to all present the only reason I was no longer working at the Probation Department was because of my skin color."

Defendant objects that this statement is inadmissible hearsay under FRE 802.

Ruling: SUSTAINED.  The recounted statement by Mr. Bond is inadmissible hearsay, not subject to a valid exception.  At the hearing, Plaintiff informed the Court that Mr. Bond is unwilling to testify in this case, *see* Tr. at 4:2–18, thus the evidence would not be admissible at trial.

### 10. Hermange Decl. ¶ 20: Plaintiff's pre-litigation contacts with County Executives

Plaintiff declares, in relevant part:

I made several attempts to avoid litigation. I contacted the Deputy County Exec. Luke Leung asking him to investigate my claim that the release was not due to work performance but was instead racially motivated. Mr. Leung met with me for two hours and stated he would look into it, even though Mr. Leung later refused to take my calls or answer emails. I notified County Exec. Jeff Smith and Mr. Lueng by email that I would file a complaint with EEOC if I did not hear from them within thirty days . . . . I made another attempt to avoid litigation by contacting County Deputy Exec. Sylvia Gallegos asking her investigate [sic] my claims of discrimination. She declined and told me to sue.

Defendant objects that the testimony is irrelevant under FRE 401, contains inadmissible hearsay under FRE 802, and lacks foundation under FRE 602.

Ruling:  SUSTAINED.  This evidence is irrelevant to Plaintiff's claims of race discrimination; he does not allege that any of these individuals participated in any allegedly discriminatory conduct.

### 11. Hermange Depo. at 10:21–23: Statements re comments on first day

United States District Court
Northern District of California

1   Plaintiff testified to the following at his deposition: "I was given a heads up on my first day

2   on the job that [Ms. Alcantar] didn't want me there and she doesn't like white people."

3   Defendant objects that this statement contains inadmissible hearsay under FRE 802.

4   Ruling: SUSTAINED.  This statement is apparently in reference to Mr. Bond's and Ms.

5   Joe's statements from objection nos. 1 and 2 above, which the Court has deemed inadmissible.  To

6   the extent someone else told Plaintiff that Ms. Alcantar does not like white people, the statement is

7   inadmissible for the same reasons as objections nos. 1 and 2.

8   **12. Hermange Depo. at 11:3–11: Statement re first belief of racial discrimination**

9   When asked when he first believed his probationary release was based on racial

10   discrimination, Plaintiff testified as follows:

11   Well, it started on the first week I was on the job working with her.  She -- Ms.
12   Alcantar would point out different people that she said were problem employees and
   people that she didn't like, and there was a pattern of the people she didn't like were
13   Caucasian managers and employees.

14   Defendant objects that this statement is inadmissible speculative opinion not rationally

   based on Plaintiff's perception and thus inadmissible under FRE 701.

15   Ruling: OVERRULED.  Plaintiff has firsthand knowledge of Ms. Alcantar's statements

16   and whether the managers and employees about whom Ms. Alcantar commented appear to be

17   Caucasian.

18   **13. Hermange Depo. at 16:1–18: Statements re EEOC**

19   Plaintiff testified to the following at his deposition:

20   And one thing I think should be noted with the investigation, the EEOC never
21   contacted me to ask me any questions about my charge of discrimination. They never
   assigned the case. They never had the opportunity to do an investigation, so it was
22   actually a lack of investigation. They said they received a response from the County,
   and based solely on the response from the County, they dismissed the case without
23   ever contacting asking me to clarify anything.

24   Defendant objects that these statements are irrelevant under FRE 401 and inadmissible

25   hearsay under FRE 802.

26   Ruling: SUSTAINED.  The statements are irrelevant to Plaintiff's claim of racial

27   discrimination, except to the extent they demonstrated he exhausted his administrative remedies

28   with the EEOC.  Because Defendant does not argue Plaintiff failed to exhaust these remedies, the

1   statement is inadmissible as irrelevant.

2   **14. Hermange Depo. at 16:19–17:12: Statements by Sylvia Gallegos**

3   Plaintiff testified to the following at his deposition:

4   I contacted the County exec's office and asked them to investigate my claims . . . .
    Before I filed a lawsuit, I made an attempt to avoid filing the lawsuit, and I spoke to
5   Sylvia Gallegos. . . . She was a deputy county executive, and told her I wanted the
    County to look into my claims, and she said that they would not do it unless I filed a
6   lawsuit. . . . She would not discuss anything having to do with it. She just told me if
    I wanted the County to look into it, that I would have to follow file [sic] a lawsuit.

7   Defendant objects that these statements are irrelevant under FRE 401 and inadmissible

8   hearsay under FRE 802.

9   __Ruling__:  SUSTAINED.  This evidence is irrelevant to Plaintiff's claims of race

10  discrimination; he does not allege that Sylvia Gallegos participated in any allegedly discriminatory

11  conduct.

12  **15. Hermange Depo. at 29:7–30:7: Statements re November meeting with Delores[3]**
13      **Nnam and Patricia McClure**

14  Plaintiff testified to the following at his deposition:

15  [My union representative (Patricia McClure), Dolores Nnam, and I] went item per
    item down all the evidence that was submitted for the release of me over at Adult
16  Probation, and I had a written proof that all the documentation was either irrelevant
    or false. The claims of like wrong mileage were false that had been disproven at least
17  two times previous to that meeting where I have the originals that show there was no
    mistakes made.
18      Dolores completely ignored all the evidence that I brought to her.  She also -- one
    of the claims in the release was I didn't take notes, and I provided for her four spiral-
19  bound notebooks completely full of notes from every day that I was there at work,
    and that was the only thing that she responds to in this decision.
20      She said that did show her that I did take notes, but she said she has no way to
    tell when the notes were written, so she's not -- well, she says she doesn't know when
21  they were written, and she ignored all the other evidence that I brought her that
    proved that everything in the release was either irrelevant or false.
22
    Defendant objects on the basis that this testimony (1) concerns a meeting pertaining to the
23
    administrative process after Plaintiff received his probationary release and thus is irrelevant under
24
    FRE 401, and (2) contains inadmissible hearsay under FRE 802.
25
    __Ruling__:  OVERRULED.  Plaintiff argues that Delores Nnam was involved in his release.
26

27

28  _____
    [3] The documents indicate that Ms. Nnam's name is spelled with an "e," not an "o" as transcribed
    by the court reporter during Plaintiff's deposition.

United States District Court
Northern District of California

1    This meeting occurred soon afterward and is relevant to Ms. Nnam's actions with respect to the

2    release and the evidence allegedly contradicting the underlying reasons for the release.  Moreover,

3    to the extent Plaintiff recounts Ms. Nnam's statements, they are admissions of an opposing party.

4        **16. Hermange Depo. at 42:8–43:22: Meeting with Sheila Mitchell**

5        Plaintiff testified at his deposition that before he was released, the Chief of the Probation

6    Department Sheila Mitchell, an African-American woman, came to meet him, saying "she wanted

7    to see who [he] was because Dolores [Nnam] and Susie [Alcantar] had requested to release [him],

8    and she wanted to see who [he] was before she approved it."   And he responded by saying

9    "Whatever they're telling you is false. There's two sides to the story, and I've done a good job

10   here."  After which Ms. Mitchell just walked away and said, "it was nice meeting you."

11       Defendant objects that this recounted interaction is irrelevant under FRE 401.

12       Ruling:  OVERRULED.  This testimony is relevant to demonstrate that Ms. Nnam and Ms.

13   Alcantar were involved in the request to release Plaintiff and that Ms. Mitchell may have been

14   involved in approving that request.

15       **17. Hermange Depo. at 47:12–22[4]: Statements about Probation's hiring practices**

16       Plaintiff testified to the following at his deposition:

17       Q. Well, what is your basis for your belief that they might be racist, Sheila Mitchell
         and --

18
         A. Because the hiring practice at Adult Probation, there is almost no Caucasian
19       managers there. They're all either black, Hispanic and almost all female, so there's
         an agenda there that they are promoting, and I didn't fit their agenda, and that's just
20       based on the numbers of people they hire and who they hire.

21       Q. So all the managers are either women, Hispanic or African-American?
         A. Not all, but the majority.

22       Defendant objects to this testimony as speculative opinion testimony lacking foundation

23   under FRE 701.

24       Ruling:  SUSTAINED as to the following portion: " . . . so there's an agenda there that

25   they are promoting, and I didn't fit their agenda, and that's just based on the numbers of people

26

27   ────────────────

28   [4] The County objects to Hermange Depo. at 58:12–22, but its objection clearly applies to 47:12–22.

United States District Court
Northern District of California

they hire and who they hire." The statement lacks foundation and is speculative. Moreover, Plaintiff does not have personal knowledge of the ethnicities and genders of the managers in the Probation Department during the time he was not employed there. OVERRULED as to the ethnicities and genders of the managers during his employment. While an employee of the Probation Department, Plaintiff could have firsthand knowledge of the perceived ethnicity of the managers in the Department.

**18. Hermange Depo. at 67:3–10: Statements about Ms. Alcantar's supervisees**

Plaintiff testified to the following at his deposition:

> There was a facilities maintenance representative that was on leave that [Ms. Alcantar] was a supervisor for, but that person was on leave pretty much from the time I started, and she was not allowed to come back to work. She was a Caucasian woman, and they wouldn't let her come back to work. She was the other [Facilities Maintenance Representative].

Defendant objects to this evidence as speculative opinion testimony lacking foundation under FRE 701.

<u>Ruling</u>: SUSTAINED for lack of foundation to the extent Plaintiff testifies that the other woman was "not allowed to come back to work" and "they wouldn't let her come back to work"; OVERRULED to the extent Plaintiff testifies that the woman was Caucasian and was on leave while he worked there. Plaintiff could have personal knowledge of these latter facts.

**19. Hermange Depo. at 99:25–100:25: Statements by Rebecca Flores**

Plaintiff recounted at his deposition a discussion he had with Rebecca Flores, the Equal Opportunity officer at Adult Probation, during June or July of his employment. Ms. Flores told him that "she felt [he] was being mistreated by Ms. Alcantar, and she wanted to know why I hadn't filed a grievance about the mistreatment. Namely her number one concern was me having to dig through the trash twice a day. She said it was humiliating, and she couldn't believe that I would put up with that."

Defendant objects that this testimony contains inadmissible hearsay under FRE 802.

<u>Ruling</u>: OVERRULED. As an equal opportunity officer for Adult Probation, Ms. Flores's statements could be admissible at trial as an opposing party's statement under FRE 801(d)(2).

**20. Hermange Depo. at 102:9–16: Statements by Ted Bond**

Plaintiff testified to the following at his deposition:

Q. Okay. And the first interrogatory inquires of you regarding each and every instance of being told that you should expect to be let go from the position of FMR because Susana Alcantar did not want to work with and you responded Ted Bond and Carolyn Joe.

A. Yes.

Q. Okay. So when did Ted Bond tell you that?

A. On the first morning that I was at work.

Defendant objects to these statements as inadmissible hearsay under FRE 802 and as speculative opinion testimony under FRE 701.

Ruling:  SUSTAINED. The recounted statements are based on inadmissible hearsay not subject to a valid exception.  The Court has held that Mr. Bond's statements to Plaintiff regarding Ms. Alcantar are inadmissible.  At the hearing, Plaintiff informed the Court that Ms. Joe and Mr. Bond are unwilling to testify in this case, *see* Tr. at 4:2–18, thus the evidence would not be admissible at trial.  Moreover, the statements lack foundation and are speculative because they are not supported by any proffered facts.

**21. Hermange Depo. at 103:7–23: Statements by Ted Bond**

Plaintiff testified to the following at his deposition:

Q. And so the first time [Mr. Bond] ever made any comments about her to you was the first day on the job?

A. Yes.

Q. What did he say?

A. He said that [Ms. Alcantar] didn't want me working there and that she was going to try to get rid of me, and that Vickie Gorley forced her to hire me, and he said that she was -- wanted to put the job out on the open competitive so she could get who she wanted in the position, and when she was told that I was fully qualified and they'd have to give me the opportunity, Ted said that she told the -- the managers there, I'll tell you right now, he's not going to work out.

Q. Did Ted say which managers that Susana told this to?

A. All three of the managers that were with Susana.  That was Vickie Gorley, Carolyn Joe and Ted Bond.

Defendant objects to these statements as inadmissible hearsay under FRE 802 and as speculative opinion testimony under FRE 701.

Ruling: SUSTAINED.  The recounted statements by Mr. Bond are hearsay (and double hearsay) statements, not subject to any valid hearsay exception.  At the hearing, Plaintiff informed

United States District Court
Northern District of California

the Court that Mr. Bond is unwilling to testify in this case, *see* Tr. at 4:2–18, thus the evidence would not be admissible at trial.

### 22. Hermange Depo. at 106:9–16: Statements by Carolyn Joe

Plaintiff testified to the following at his deposition:

Q. Now, what about -- you mentioned Carolyn Joe, and when did Carolyn Joe tell you that Alcantar didn't like you?

A. The same morning. It was right after Ted left. A few minutes later, she had walked up and told me that basically, the exact same thing that Ted did, that Susie doesn't want me working there and she's going to try to fire me.

Defendant objects to these statements as inadmissible hearsay under FRE 802 and as speculative opinion testimony under FRE 701.

Ruling: SUSTAINED.  The recounted statements by Ms. Joe are hearsay statements, not subject to any valid hearsay exception.  At the hearing, Plaintiff informed the Court that Ms. Joe is unwilling to testify in this case, *see* Tr. at 4:2–18, thus the evidence would not be admissible at trial.  Moreover, Ms. Joe's statement that Ms. Alcantar would try to get rid of Plaintiff lacks foundation and is speculative because Ms. Joe's recounted opinion is not supported by any proffered facts.

### 23. Hermange Depo. at 106:17–23: Statements by Carolyn Joe

Plaintiff testified to the following at his deposition:

Q. Did she make any comments at that time about Susana being a racist?
A. Yes. She actually used the word. She said, Susie's a racist. She hates white people.
Q. Was this conversation out in the open or was it private that you had with -- with Carolyn?
A. It was in my cubicle, also.

Defendant objects to these statements as inadmissible hearsay under FRE 802 and as speculative opinion testimony under FRE 701.

Ruling: SUSTAINED.  The recounted statements by Ms. Joe are hearsay statements, not subject to any valid hearsay exception.  At the hearing, Plaintiff informed the Court that Ms. Joe is unwilling to testify in this case, *see* Tr. at 4:2–18, ECF 41, thus the evidence would not be admissible at trial.  Moreover, Ms. Joe's statement that Ms. Alcantar is a racist lacks foundation

1   and is speculative because Ms. Joe's recounted opinion is not supported by any proffered facts.

2   **24. Hermange Depo. at 108:8–15: Statements re job duties**

3   Plaintiff testified to the following at his deposition:

4   They actually had to split up the job -- two to three different people are doing the job
    I was doing. They have one person doing the fleet part of it exclusively, and then
5   they have a person that's doing facilities, and apparently, I'm told he had an assistant
    to help him do it, and I was doing all those tasks on my own and keeping up with it
6   until I was bogged down with false reports.

7   Defendant objects to these statements as inadmissible hearsay under FRE 802 and as

8   speculative opinion testimony under FRE 701.

9   <u>Ruling</u>:  SUSTAINED.  Plaintiff does not have personal knowledge as to what occurred at

10  his former employment after he was terminated; the statements lack foundation and recounts

11  inadmissible hearsay.

12  **25. Pl. Exhibit 229[5] – Letter from County Counsel to Plaintiff dated May 11, 2018**

13  Plaintiff attaches as an exhibit to his declaration a letter dated May 11, 2018 from the

14  County to Plaintiff regarding a public records request by Plaintiff.

15  Defendant objects that this document is irrelevant under FRE 401 and 403.

16  <u>Ruling</u>:  SUSTAINED.  The letter is irrelevant to Plaintiff's claim for race discrimination.

17  **26. Pl. Exhibit 235 – Emails regarding Plaintiff's Administrative Remedies**

18  Plaintiff attaches as an exhibit to his declaration an email exchange between him, his union

19  representatives, and individuals in the Probation Department, regarding Plaintiff's right to take

20  part in an administrative review process.

21  Defendant objects that this document is irrelevant under FRE 401 and 403.

22  <u>Ruling</u>:  SUSTAINED.  The letter is irrelevant to Plaintiff's claim for race discrimination.

23  **27. Pl. Exhibit 243 – Plaintiff's Emails to Luke Leung**

24  Plaintiff attaches as an exhibit to his declaration an email exchange between him and Luke

25  Leung, a County executive, in May 2011 and July 2011, regarding whether the County would

26  investigate Plaintiff's discrimination claim.

27

28  _____

[5] All exhibits to the Hermange Declaration are located at ECF 32-1.

United States District Court
Northern District of California

1    Defendant objects that the document is irrelevant under FRE 401 and 403.

2    Ruling:  SUSTAINED.  This evidence is irrelevant to Plaintiff's claims of race

3    discrimination; he does not allege that Luke Leung participated in any allegedly discriminatory

4    conduct.

### III.    LEGAL STANDARD

6    "A party is entitled to summary judgment if the 'movant shows that there is no genuine

7    dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *City of*

8    *Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P.

9    56(a)).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty*

10   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists if there is sufficient

11   evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id*. at 248–49.

12   The party moving for summary judgment bears the initial burden of informing the court of

13   the basis for the motion, and identifying portions of the pleadings, depositions, answers to

14   interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

15   fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the moving party

16   must either produce evidence negating an essential element of the nonmoving party's claim or

17   defense or show that the nonmoving party does not have enough evidence of an essential element

18   to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

19   *Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).

20   If the moving party meets its initial burden, the burden shifts to the nonmoving party to

21   produce evidence supporting its claims or defenses.  *Id.* at 1103.  If the nonmoving party does not

22   produce evidence to show a genuine issue of material fact, the moving party is entitled to

23   summary judgment.  *Celotex*, 477 U.S. at 323.  "The court must view the evidence in the light

24   most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor."

25   *City of Pomona*, 750 F.3d at 1049.  In judging evidence at the summary judgment stage, "the

26   Court does not make credibility determinations or weigh conflicting evidence, and is required to

27   draw all inferences in a light most favorable to the nonmoving party."  *First Pac. Networks, Inc. v.*

28   *Atl. Mut. Ins. Co.,* 891 F. Supp. 510, 513–14 (N.D. Cal. 1995).  "[T]he 'mere existence of a

United States District Court
Northern District of California

1    scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for

2    summary judgment. *Id.* (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "'Where the record taken

3    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

4    genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

5    U.S. 574, 587 (1986)).

6    **IV.    DISCUSSION**

7          **A.    *McDonnell Douglas* Standard**

8          In *McDonnell Douglas*, the Supreme Court held that a burden-shifting framework applies

9    to Title VII claims. *McDonnell Douglas*, 411 U.S. at 802. Under this framework, the plaintiff

10   must first establish a prima facie case of discrimination. *Id.*; *Hawn v. Exec. Jet Mgmt., Inc.*, 615

11   F.3d 1151, 1155 (9th Cir. 2010). To establish a prima facie case, plaintiffs must show: "(1) that

12   they are members of a protected class; (2) that they were qualified for their positions and

13   performing their jobs satisfactorily; (3) that they experienced adverse employment actions; and (4)

14   that similarly situated individuals outside [their] protected class were treated more favorably, or

15   other circumstances surrounding the adverse employment action give rise to an inference of

16   discrimination." *Hawn*, 615 F.3d at 1155 (internal citation and quotation marks omitted)

17   (alteration in original); *see also Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008). "At the

18   summary judgment stage, the requisite degree of proof necessary to establish a prima facie case is

19   minimal and does not even need to rise to the level of a preponderance of the evidence." *Lyons v.

20   England*, 307 F.3d 1092, 1112 (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994))

21   (internal quotation marks, alteration, and emphasis omitted).

22         If the plaintiff establishes a prima facie case, the burden of production, but not persuasion,

23   shifts to the employer to articulate one or more legitimate, nondiscriminatory reasons for the

24   challenged actions. *Hawn*, 615 F.3d at 1155. If this burden is met, the plaintiff "must then raise a

25   triable issue of material fact as to whether the defendant's proffered reasons for [the employee's]

26   termination[ ] are mere pretext for unlawful discrimination." *Id.*

27         Absent direct evidence of discrimination, to establish pretext the employee must offer

28   "specific, substantial evidence of pretext." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir.

United States District Court
Northern District of California

17

1994), *as amended on denial of reh'g* (July 14, 1994) (quoting *Steckl v. Motorola*, 703 F.2d 392, 393 (9th Cir. 1983)).  Evidence of pretext must be considered cumulatively.  *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1129 (9th Cir. 2000).  "The plaintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise unbelievable."  *Dominguez-Curry v. Nev. Transp. Dept.* 424 F.3d 1027, 1037 (9th Cir. 2005) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220–22 (9th Cir. 1998)).

### 1.  Plaintiff Makes a Prima Facie Claim for Discrimination

Plaintiff has established a prima facie case of race discrimination.  He is a member of a protected class (Caucasian individuals), who was qualified for his position.  He experienced an adverse employment action because he was released and not given a permanent position.  As discussed in more detail below, he alleges that he was singled out for mistreatment by his Hispanic manager, and he provides some evidence that he was performing his job duties effectively.

To establish satisfactory job performance, Plaintiff must produce "substantial evidence of satisfactory job performance sufficient to create a jury question on this issue."  *Douglas v. Anderson*, 656 F.2d 528, 533 n.5 (9th Cir. 1981).  At the *prima facie* stage, the plaintiff need not "eliminate the possibility that he was laid off for inadequate job performance," because such a requirement would "conflate the minimal inference needed to establish a prima facie case with the specific, substantial showing" required at the pretext stage of the *McDonnell Douglas* analysis.  *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).  Given that Plaintiff provides some evidence that he was performing his job adequately, such as performance reviews with little negative feedback and some positive feedback.  *See* Hermange Decl., Ex. 222.

Accordingly, Defendant has failed to demonstrate that Plaintiff cannot establish a *prima facie* case of race discrimination.

### 2.  Defendant Proffers Legitimate Reasons for Terminating Plaintiff

Defendant argues that it has proffered legitimate reasons for releasing Plaintiff based on "Plaintiff's failure to perform assigned duties and his abrasive and uncooperative attitude with

supervisors."  Mot. at 12.

As a general matter, Ms. Alcantar and Ms. Gorley both submit declarations testifying that "Plaintiff repeatedly submitted work that was incorrect, incomplete, or late," that he "routinely missed" deadlines, that he "lack[ed] interest in following instructions," that he "failed to demonstrate basic responsibility and complete assignments," and "failed to follow simple instructions."  Opp. at 13–15 (citing Capozzi Decl., Ex. A., Ex. 7; Alcantar Decl. ¶¶ 5–12; Gorley Decl. ¶¶ 5–6, 8–10; Capozzi Decl., Ex. A. at 62:12–66:7).  Despite training and efforts by Ms. Alcantar and Ms. Gorley, Plaintiff's performance did not improve.  *Id.* at 15 (citing Gorley Decl. ¶¶ 5–6, 8–10; Alcantar Decl. ¶¶ 7–10).  They also testify that he had an abrasive and uncooperative attitude, that he would resist training efforts, and that eventually Ms. Alcantar no longer felt safe meeting with him because he once became angry and threatening.  *Id.* at 15–16 (citing Capozzi Decl., Ex. A., Ex. 7; Alcantar Decl. ¶¶ 5, 9, 13; Gorley Decl. ¶ 6).

Plaintiff refutes these conclusions, attesting that he was "fully capable of doing all his job duties and assignments" and that his tasks were straightforward and he was able to perform them without further instruction.  *See* Opp. at 8; Hermange Decl. ¶ 9, Ex. 232.  In support of this, he submits his bi-weekly review reports, written by Ms. Alcantar, which he believes show he was completing his job duties and never needed to be retrained.  Hermange Decl., Ex. 222.  The reports largely reflect Plaintiff's story.  *See, e.g.*, ECF 32-1 at 5 ("This task was completed by the due date and came out very well.").  However, there are a few notes in these reviews that comport with Ms. Alcantar's and Ms. Gorley's testimony that Plaintiff had some issues.  *See, e.g.*, ECF 32-1 at 47 (Plaintiff "taken off of Facility duty to comprehend Fleet portion of his tasks"); *id.* at 50 ("Follow up is still very needed in this area and learning to think outside the box to take different measures to get answers that he needs is still in the works."); *id.* at 51 ("He needs to be more careful with emails."); *id.* at 52 (reviewing areas of needed improvement).  Plaintiff does not refute that he sometimes would not follow Ms. Alcantar's instructions because he believed they were "wrong and redundant" and "add[ed] extra steps to stuff."  Hermange Depo. at 62:12–66:7.

More specifically, Defendant points to several instances in which it says Plaintiff performed inadequately or acted unprofessionally that demonstrate that it has proffered legitimate

19

United States District Court
Northern District of California

reasons for Plaintiff's release.  Plaintiff provides a contrary interpretation for many, but not all, of these instances.  The Court discusses each incident in turn and whether Plaintiff offers evidence to the contrary.

### a.  Specific Incidents of Plaintiff's Alleged Performance Issues

May 2010 Monthly Odometer Report:  On May 18, 2010, Ms. Alcantar trained Plaintiff on how to complete a monthly odometer report, instructing him to manually calculate the mileage of the vehicles and provide Ms. Alcantar a copy of the report on a monthly basis.  Capozzi Decl., Ex. A, Ex. 7 at 3–4.  Ms. Alcantar wanted Plaintiff to enter the information manually to check Plaintiff's understanding of the process, check his ability to do the required math, and to identify any discrepancies in the report.  *Id.*; Alcantar Decl. ¶ 8.  The report needed to be accurate to ensure the Department was correctly charged and the vehicles were timely serviced.  *Id.*  Instead of manually calculating the mileage, as instructed, Plaintiff used the computer and did not provide a manual report to Ms. Alcantar.  Capozzi Decl., Ex. A, Ex. 7 at 3–4; *see* Gorley Decl. ¶ 5.  When Ms. Alcantar confronted Plaintiff about not following instructions, he responded by saying his way was "faster."  *Id.*  Plaintiff does not offer contrary evidence or testimony.

Plaintiff's Notetaking:  Ms. Alcantar states that Plaintiff refused to take notes despite her requests that he do so.  According to Ms. Alcantar, she consistently asked and reminded Plaintiff to take notes, including of step-by-step tasks she was demonstrating to him and of information necessary to complete his duties.  Capozzi Decl., Ex. A, Ex. 7 at 4–5; Alcantar ¶¶ 7, 9.  Plaintiff allegedly routinely indicated that he did not understand the need to take notes or that he thought it was a waste of time.  Capozzi Decl., Ex. A, Ex. 7 at 4–5; Alcantar ¶¶ 7, 9.  Plaintiff testifies that he "took extensive notes and documented his daily activities" and that he never refused to take notes.  Hermange Decl. ¶ 10.  He says he has nearly four notebooks worth of notes demonstrating the sufficiency of his work.  *Id.*; Hermange Depo. at 29:22–30:1–2, 31:15–23, 66:14–25; *see also* Hermange Decl. ¶ 11.

May Box Moving Incident:  On May 24, 2010, during Plaintiff's first week on the job, Ms. Alcantar asked Plaintiff to move some boxes for her.  Capozzi Decl., Ex. A, Ex. 7 at 4; Alcantar Decl. ¶ 15; Hermange Decl. ¶ 6.  Ms. Alcantar told Plaintiff, "Mike, watch your back" or "Hey

Mike, watch your back!"  Alcantar Decl. ¶ 15; Hermange Decl. ¶ 6.  Ms. Alcantar says she was worried Plaintiff was going to hurt himself.  Alcantar Decl. ¶ 15.  Plaintiff responded by saying something like "You need to be careful how you say that" or "You better be careful with what you say, someone got in trouble saying that."  Capozzi Decl., Ex. A, Ex. 7 at 4; Alcantar Decl. ¶ 15; Hermange Decl. ¶ 6.  Plaintiff says his response was in reference to a separate incident in which Labor Relations released a memorandum saying that "Watch your back" could be considered a threat of physical violence.  Hermange Decl. ¶ 6.  Ms. Alcantar asked Plaintiff if he thought she was threatening him and he responded "No."  *Id.*  Ms. Alcantar believed that Plaintiff's tone was "abrupt and abrasive" and "totally uncalled for given the circumstances."  Alcantar Decl. ¶ 15.  Plaintiff says "[he] was trying to be jovial and just sharing, you know, trying to get a rapport and comradery with her."  Hermange Depo. at 82:8–10.  Plaintiff says Ms. Alcantar "abruptly stalked off before [he] could tell her about the [related] incident."  Hermange Decl. ¶ 6.

July Monthly Odometer Review Meeting:  In July 2010, Ms. Alcantar met with Plaintiff at a performance review meeting to discuss the July monthly odometer report.  At the meeting Ms. Alcantar told Plaintiff he had inaccurately reported the mileage for several vehicles.  Capozzi Decl., Ex. A, Ex. 7 at 5.  Ms. Alcantar states that Plaintiff "started to get very defensive" and made comments to Ms. Alcantar about how she was giving him too much work, intimidating him, and bullying him.  Alcantar Decl. ¶ 13.  According to her, Plaintiff "stood and began pounding the table" and "leaning toward her while she was sitting down," and Ms. Alcantar "felt very threatened."  Capozzi Decl., Ex. A, Ex. 7 at 5; Alcantar Decl. ¶ 13.  Apparently discussing this same meeting, Plaintiff says he was able to prove to her that there were no mistakes in the report.  Opp. at 9.  He says Ms. Alcantar checked with another employee about this, and when she returned, she started speaking to Plaintiff "in an angry voice" and yelling at him.  Hermange Depo. at 90:1–93:23.  He does not mention his demeanor, but it is worth noting that with respect to this incident the Personnel Board did not find sufficient evidence to sustain a violation of the Merit System Rule, Article 11, Section A25-301(a)(5) for "[b]rutality in the performance of duties" by Plaintiff.

Review of Probation Department's Annual Report:  On June 3, 2010, Ms. Alcantar

instructed Plaintiff to read the Department's annual report to learn about the Department's various units and their vehicle needs. Capozzi Decl., Ex. A, Ex. 7 at 6. Plaintiff had until June 18, 2010 to return the report, but he did not return it by that date. *Id.* When Ms. Alcantar spoke to Plaintiff about the report on July 23, 2010, he told her he "glanced at it." Capozzi Decl., Ex. A, Ex. 7 at 6. Plaintiff does not offer any evidence to the contrary, except his general statement that he never missed a deadline. Opp. at 9.

August Fleet User Report: On August 20, 2010, Ms. Alcantar instructed Plaintiff to complete a fleet user report by meeting with the vehicle fleet users and determining their vehicle needs. *Id.* She says the deadline to complete this task was September 13, 2010. Plaintiff missed this deadline. Alcantar Decl. ¶ 12. Ms. Alcantar gave him multiple extensions to September 20, 2010 and October 1, 2010, and Plaintiff missed both extended deadlines. *Id.* He did not submit the report until October 4, 2010, and she says that the report was incomplete; Plaintiff had only interviewed 23 out of 49 of the fleet users. *Id.*; Capozzi Decl., Ex. A, Ex. 7 at 6–7. Ms. Alcantar had to assign the task to another person so it could be completed. Alcantar Decl. ¶ 12. Plaintiff says he was never given a due date for this assignment and that he completed the assignment as instructed (interviewing only some of the vehicle fleet users), and he provides evidence that the assignment was more limited than what Ms. Alcantar claims. Hermange Decl., Ex. 222; ECF 32-1 at 50, 52; Hermange Decl., Ex. 223.

Computer Skills: When he was interviewed, Plaintiff indicated that he had proficient computer skills, including knowing how to use Microsoft programs such as Excel. Capozzi Decl., Ex. A, Ex. 7 at 7; Gorley Decl. at ¶ 7. During his employment, however, Ms. Gorley came to believe that he did not have such skills, because he could not properly generate and format documents. Gorley Decl. ¶ 7. She says that his Microsoft Excel skills did not improve, even after he took a class. *Id.*; Capozzi Decl., Ex. A, dep Ex. 7 at 7. Plaintiff states that he created from scratch in Excel trend reports documenting the work he was doing at multiple facilities, which he claims demonstrates he had sufficient computer skills. Hermange Decl. ¶ 8, Ex. 231.

September Performance Counseling: On September 13, 2010, at a review meeting, Ms. Alcantar informed Plaintiff that his performance would need to improve in several areas before the

United States District Court
Northern District of California

end of probationary period on November 15, 2010.  Capozzi Decl., Ex. A, Ex. 7 at 8.  Ms. Alcantar listed several areas of improvement, including following-up on outstanding assignments until they are completed, handling specific assignment without assistance, being assertive and professional in carrying out duties, and following supervisor's instructions and directives.  *Id.* at 8–9.

September 2010 Odometer Report:  On September 20, 2010, Ms. Alcantar sent Plaintiff an email requesting that he complete a report regarding the fleet vehicles' mileages.  The email provided instructions on how to complete the report.  Capozzi Decl., Ex. A, Ex. 7 at 9.  Plaintiff requested further instructions from Ms. Alcantar, which she provided.  *Id.*  He turned in several versions of the report on September 21, 2010, each of which was incorrect.  *Id.*  On September 23, 2010, Plaintiff asked for further instruction, which Ms. Alcantar provided.  Ms. Alcantar extended Plaintiff's deadline to October 4, 2010, and again to October 7, 2010.  *Id.*  Ms. Alcantar says Plaintiff missed this deadline without informing Ms. Alcantar that he could not meet it, and that he turned in the report on October 8, 2010.  *Id.*  Plaintiff does not offer any evidence to the contrary except his general statement that he never missed a deadline.  Opp. at 9.

Reformatting of Master Vehicle Log:  In training Plaintiff on how to complete the Master Vehicle Log, Ms. Alcantar told Plaintiff not to change the format of the document.  *Id.* at 10.  The formatting of the report was familiar to all managers in the Department and allowed them to evaluate both the vehicles and their user trends.  Alcantar Decl. ¶ 6.  On October 19, 2010, Ms. Alcantar noticed that Plaintiff had changed the format.  When she asked him about this, he responded that he had "changed it a little bit."  Capozzi Decl., Ex. A, Ex. 7 at 10; *see* Alcantar Decl. ¶ 6.  Plaintiff told Ms. Alcantar that he had changed it because he "assumed it would help [her]."  Capozzi Decl., Ex. A, Ex. 7 at 10.  Plaintiff does not offer evidence or testimony to the contrary.

September and October Fleet Inventory Reports:  Though Plaintiff was supposed to submit the monthly fleet inventory reports in the last week of each month, Ms. Alcantar alleges he failed to timely submit them in both September and October, submitting both a week after they were due and only after prompting from Ms. Alcantar.  Alcantar Decl. ¶ 11.  Plaintiff says specifically that

1    he met this deadline.  Opp. at 9.

2       <u>Need to Hire Help for Plaintiff's Duties</u>:  Ms. Alcantar avers that because Plaintiff could

3 not effectively handle all of his assignments and because Ms. Alcantar had to spend a lot of time

4 completing and correcting his work and supervising Plaintiff, Ms. Alcantar's unit in the

5 Department had to hire two additional temporary personnel.  *Id.* ¶ 14.  The unit had never needed

6 to hire additional help in the past; the three people in Plaintiff's position previously did not need

7 their workloads reduced.  *Id.*  Plaintiff does not offer evidence or testimony to the contrary, except

8 to say that he was doing more work than his position usually required.  *See* Hermange Depo. at

9 67:3–9.

10       <u>Retraining Efforts</u>:  Ms. Alcantar avers that throughout Plaintiff's employment, he

11 consistently needed retraining because his work was not satisfactory.  Alcantar Decl. ¶ 8; Capozzi

12 Decl., Ex. A, Ex. 7 at 11–12.  She says she provided him hands-on training "almost daily" on his

13 tasks and held several retraining sessions for him.  Alcantar Decl. ¶¶ 5, 8.  And she testifies that, at

14 times, Plaintiff was unwilling to follow or even review the established procedures and processes

15 for his tasks.  *Id.* ¶¶ 8–9.  Plaintiff avers that he was never retrained during the probationary

16 period, as evidenced by the lack of any reference to such retraining in his bi-weekly reviews.

17 Hermange Decl. ¶ 7; Hermange Decl., Ex. 222.  He says his tasks were straightforward and he was

18 able to perform them without further instruction.  *Id.* ¶ 9.  And he says that Ms. Alcantar provided

19 limited training and would often tell him she did not have time to train him and that he needed to

20 figure things out on his own.  Hermange Depo. at 62:15–17; *see also* Hermange Decl. ¶ 11.

21       <u>Biweekly Performance Counseling</u>:  Ms. Gorley and Ms. Alcantar aver that Plaintiff

22 continually failed in his job responsibilities in the first several months of his employment.

23 Alcantar Decl. ¶¶ 5–8; Gorley Decl. at ¶¶ 8–11.  As a result, in September 2010, Mmes. Gorley

24 and Alcantar began meeting with Plaintiff in bi-weekly performance counseling sessions to

25 address his performance and attitude.  Gorley Decl. ¶ 8.  They say that these sessions did not help

26 him improve on either front.  *Id.*  Plaintiff does not refute that these sessions occurred, but argues

27 generally that he was not underperforming.

28           **b.  Defendant's Evidence Presents Legitimate Reasons for Releasing**

United States District Court
Northern District of California

**Plaintiff**

Inadequate work performance constitutes a legitimate reason for disciplinary action. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996); *see also Aragon*, 292 F.3d at 661 ("[Plaintiff's] poor job performance . . . constitute[s] a legitimate, nondiscriminatory reason for terminating [Plaintiff's] employment with [Defendant]."). Other courts have found that an employee's inability to successfully complete job duties in a timely and accurate manner is a legitimate, non-discriminatory reason to terminate the employee. *See, e.g.*, *Millsaps v. Pinal Cty. Superior Court Dep't of Adult Prob.*, No. CV-09-00761-PHX-ROS, 2011 WL 13190176, at *2 (D. Ariz. Mar. 30, 2011), *aff'd sub nom. Millsaps v. Pinal Cty. Superior Court*, 494 F. App'x 821 (9th Cir. 2012) (finding defendant proffered legitimate, nondiscriminatory reason where employee was given several unsatisfactory reviews and failed to complete several of his job duties); *Scott v. Sears, Roebuck & Co.*, 395 F. Supp. 2d 961, 979 (D. Or. 2005) (finding employer articulated legitimate, nondiscriminatory reason where employee failed to complete all elements of certain job duties on numerous occasions).

Defendant's evidence demonstrates that it believed Plaintiff's job performance was inadequate, and thus that it had a legitimate, non-discriminatory reason to release him. Though Plaintiff believes he was performing the job well, Ms. Alcantar and Ms. Gorley found that Plaintiff consistently failed to perform sufficiently throughout his six months of employment. Though Plaintiff may believe he was doing an adequate job, the question is not whether his performance was adequate, but rather "whether there [is] sufficient evidence of unsatisfactory performance to be a legitimate concern of his employer." *Douglas*, 656 F.2d at 533 n.5.

More specifically, as shown above, Plaintiff's bi-weekly reviews contain some evidence that Plaintiff needed to improve in certain areas, as claimed by Ms. Alcantar. *See, e.g.*, ECF 32-1 at 47, 50–52; *see also* Capozzi Decl., Ex. A, Ex. 7 at 8. Mmes. Alcantar and Gorley's belief that he was underperforming is also supported by Ms. Alcantar's hiring two additional staffers to help with Plaintiff's duties and the need for biweekly performance counseling between Plaintiff and Mmes. Alcantar and Gorley. Moreover, Plaintiff does not refute that he sometimes would not follow Ms. Alcantar's instructions because he believed they were "wrong and redundant" and

"adding extra steps to stuff," Hermange Depo. at 62:12–66:7, such as with respect to the May 2010 monthly odometer report and the reformatting of the master vehicle log.  And he does not specifically refute that he missed at least two deadlines with respect to reviewing the Department's annual report and turning in the September 2010 Odometer Report on time.  Finally, the Personnel Board confirmed that it believed Plaintiff had violated Santa Clara County Merit System Rules Section A25-301 (a)(2) for "[i]nefficiency, incompetence, or negligence in the performance of duties, including failure to perform assigned task or failure to discharge duties in a prompt, competent and responsible manner."  Capozzi Decl., Ex. A, Ex 9.

Given this evidence of Plaintiff's inadequate work performance, Defendant has proffered legitimate, non-discriminatory reasons for Plaintiff's release.

### 3.  Plaintiff Has Not Provided Specific, Substantial Evidence of Pretext

Plaintiff points to several actions by various employees of Defendant that he believes demonstrate that Defendant's proffered reason is simply pretext for discrimination based on race.  Before setting forth that evidence, the Court notes that Plaintiff alleges that only Ms. Alcantar acted with a racist intent; he does not so allege for any other individual.  The Court first discusses Plaintiff's evidence and then determines that he does not meet his burden in demonstrating that a reasonable jury could conclude that Defendant released him because of his race.

### c.  Plaintiff's Alleged Evidence of Pretext

Plaintiff presents evidence relating to the actions of several County employees that he believes demonstrates that the County released him because of his race.

#### i.    Ms. Alcantar

Plaintiff says that "Ms. Alcantar went to extremes to find fault in every interaction with [him]," called him unprofessional for baseless reasons, and generally mistreated him.  *See* Opp. at 11; *see also* Opp. at 18.  He says that she mistreated him regularly, speaking to him in a rude and aggressive manner and constantly scolding him unnecessarily.  Hermange Depo. at 11:17–12:5.

He also claims (without citing any evidence) that Ms. Alcantar hired "almost exclusively female Hispanics" and wanted Mr. Hermange out of the FMR role so one of her female Hispanic staffers could take over.  Opp. at 11.  He states (without evidence) that when he left, the role was

United States District Court
Northern District of California

given to Frances Francis, a Hispanic woman.  *Id.*  He claims that two other men who later filled the FMR position were also Hispanic.  *Id.*  He also testifies that a majority of the managers in the Probation Department are either women, Hispanic or African-American.  Hermange Depo. at 47:14–22.

He also claims that Ms. Alcantar made specific statements and took specific actions that he found to be discriminatory.  Ms. Alcantar does not refute that she said or did any of these things, though she says that she never discriminated against him based on his race and only ever treated him fairly.  Alcantar Decl. ¶ 16.

Statement re Interview Applicants:  After his first interview, Plaintiff asked Ms. Alcantar when he would know whether he got a second interview, and she responded that they had to review other applicants first.  Hermange Depo. at 115:18–116:25; Hermange Decl. ¶ 2.  Plaintiff asked Ms. Alcantar how many other applicants there were, and she answered that she was not allowed to say.  *Id.*  Plaintiff says he was the only applicant, so he believes this statement by Ms. Alcantar shows she "had a discriminatory agenda towards" Plaintiff from the beginning.  Opp. at 11.

Statements re Caucasian Managers:  Plaintiff testifies that in his first week on the job, Ms. Alcantar "would point out different people that she said were problem employees and people that she didn't like, and there was a pattern of the people she didn't like were Caucasian managers and employees."  Hermange Depo. at 11:6–11.

Business Cards, Work Cell Phone, and Lunches:  Plaintiff testifies that the County's procedure is that new employees get business cards.  Hermange Decl. ¶ 12.  He says Ms. Alcantar treated him differently because when he asked if he should order himself business cards in his first week, Ms. Alcantar responded that he would not get cards until after his probationary period ended.  *Id.*  Likewise, he says Ms. Alcantar would not order him a work phone even though it is "an essential tool" to his role as an FMR.  *Id.*  He also says that he was excluded from staff lunches.  Opp. at 13.

Trash Sorting:  Plaintiff avers that Ms. Alcantar treated him differently by assigning him the task of "sorting through all the trash, compost and recycle bins throughout Adult Probation"

United States District Court
Northern District of California

twice a day.  Hermange Decl. ¶ 13; Hermange Depo. at 83:13–25.  He testifies that "[n]o other person before or after [him] has been given this assignment."  Hermange Decl. ¶ 13; Opp. at 18.  The assignment "was humiliating" and took time away from Plaintiff's ability to complete his regular duties.  *Id.*  In fact, the conduct was so unusual that Ms. Flores, the equal opportunity officer, pulled Plaintiff aside "to express her concern about [the] mistreatment" and telling him he "should file a grievance."  *Id.*

Ms. Alcantar's Alleged Fear of Plaintiff:  Plaintiff testifies that Ms. Alcantar told the Personnel Board that she was releasing Plaintiff because she feared for her life and was afraid to be around him; however, she was willing to serve his Probationary Release on him in a secluded conference room, an area with limited access and few other people around.  Hermange Decl. ¶ 15; Hermange Depo. at 72:1–21.  He believes this demonstrates that she was lying to the Personnel Board.

ii.   Ms. Vickie Gorley

Plaintiff alleges that Ms. Gorley wrongly stated in Plaintiff's release that he cost the Department money when he ordered a gas card for another employee.  Capozzi Decl., Ex. A, Ex. 7 at 7; Opp. at 14.  Plaintiff also claims that Ms. Gorley testified falsely at the Personnel Board hearing as to Plaintiff's job duties and that his job performance was poor.  Hermange Decl. ¶ 18; Hermange Depo., Ex. 250 at 32:16–22.  However, Plaintiff does not believe that Ms. Gorley ever discriminated against him based on his race.  *See* Capozzi Decl., Ex. A, 53:2–53:7.

iii.   Ms. Delores Nnam

Defendant does not mention Ms. Delores Nnam in its motion or reply.  Plaintiff testifies that Ms. Nnam, along with Ms. Alcantar, requested Plaintiff's release.  *See* Hermange Depo. 42:8–43:22; Hermange Decl. ¶ 16.  But she was also allowed to conduct his administrative review process when he challenged his release, so he believes this was a conflict of interest.  Hermange Decl. ¶ 16; Hermange Depo. at 42: 15–19.  As part of that process, Plaintiff showed Ms. Nnam some of his notes from his time of employment, but she did not believe that this evidence demonstrated his release was unwarranted.  Hermange Depo. at 29:12–30:7.  Plaintiff believes she was attempting to cover for his discriminatory release.

### d.  Plaintiff Has Not Sufficiently Demonstrated Pretext

Put simply, Plaintiff has "produced no facts which, if believed, would have shown pretext and thus tendered an issue for trial."  *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983). He does not present any direct evidence of discrimination—evidence that requires no inference by the Court—so he must prove his case through specific and substantial circumstantial evidence. *See Wallis*, 26 F.3d at 890; *Lyons*, 307 F.3d at 1112.  But he has not shown either (1) that "unlawful discrimination more likely motivated" Defendant to release him than the proffered justification; or (2) that "Defendant's proffered explanation is unworthy of credence because it is inconsistent or otherwise unbelievable."  *Dominguez-Curry v. Nev. Transp. Dept.* 424 F.3d 1027, 1037 (9th Cir. 2005).

As an initial matter, Plaintiff asserts that only Ms. Alcantar had racist intent.  But the evidence shows that Ms. Gorley, Ms. Nnam, and Ms. Sheila Mitchell (head of the Probation Department) were all involved in the decision to release Plaintiff.  *See* Hermange Depo. 42:8–43:22; Hermange Decl. ¶ 16; Gorley Decl. ¶ 11.  In fact, Ms. Alcantar testifies that she did not have decision-making authority for Plaintiff's release; she could only recommend it.  Alcantar Decl. ¶ 17.  Plaintiff does not offer any reason for the Court to infer that these three individuals offered Plaintiff's poor performance as a reason for his release as mere pretext for discrimination. His only argument is that he disagrees about the quality of his performance.  But "an employee's subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact."  *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  And an employee "cannot simply show the employer's decision was wrong, mistaken or unwise" to establish pretext.  *Dep't of Fair Employment & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011).

Similarly, Plaintiff's references to the Department's hiring practices do not support an inference of pretext.  He claims that a majority of the managers are either women, Hispanic, or African-American.  Not only does this claim lack any basis in evidence, but it also does not support an inference of racial discrimination.  First, it is possible that many of these managers are Caucasian women.  Second, he does not allege that Ms. Alcantar (the only one with alleged racist

United States District Court
Northern District of California

1    intent) has any hand in hiring managers.  And third, the Ninth Circuit does not consider proffered

2    statistical evidence persuasive when it is "derived from an extremely small universe," because it

3    "has little predictive value."  *Aragon*, 292 F.3d at 663.  Plaintiff does not tell the Court how many

4    managers there are or that the sample size is large enough to be meaningful.

5        This last reason also applies to Ms. Alcantar's alleged (though not evidenced) hiring

6    practices.  Though Plaintiff claims Ms. Alcantar hired "almost exclusively female Hispanics," he

7    does not provide a sample size for this conclusion.  And the fact that she may have hired three

8    Hispanic individuals for the role after him, this small sample size "presents no stark pattern, nor

9    does it account for possible nondiscriminatory variables."  *Id.*  The same could be said for Ms.

10   Alcantar's statements about certain Caucasian employees—Plaintiff provides no sample size for

11   how many individuals Ms. Alcantar may have made such comments about; he does not say she

12   never made such comments about non-Caucasian individuals; and he does not account for any

13   nondiscriminatory variables that could account for her beliefs about these individuals, such as job

14   performance.

15       Finally, Ms. Alcantar's alleged mistreatment of Plaintiff does not amount to pretext for

16   race discrimination.  Plaintiff submits no admissible evidence connecting Ms. Alcantar's treatment

17   of him to his race.  At this step, Plaintiff must point to evidence "that discrimination was the real

18   reason" for his release.  *Franett-Fergus v. Omak Sch. Dist. 19*, 743 F. App'x 855, 858 (9th Cir.

19   2018); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1990) ("Whatever the employer's

20   decisionmaking process, a disparate treatment claim cannot succeed unless the employee's

21   protected trait actually played a role in that process and had a determinative influence on the

22   outcome.").  Plaintiff does not, for example, identify any similarly-situated person "who (1)

23   exhibited similar job performance and conduct as Plaintiff; and (2) was not terminated."  *Zhang v.

24   Cty. of Monterey*, No. 17-CV-00007-LHK, 2018 WL 1933588, at *10 (N.D. Cal. Apr. 24, 2018),

25   *appeal docketed* No. 18-15955 (9th Cir.); *cf. Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641

26   (9th Cir. 2003), *as amended* (Jan. 2, 2004) ("A showing that the County treated similarly situated

27   employees outside [plaintiff's] protected class more favorably would be probative of pretext.").

28   Nor does he show that Ms. Alcantar treated other Caucasians poorly, or otherwise showed favor to

United States District Court
Northern District of California

non-Caucasians over Caucasians, as opposed to treating Plaintiff alone more poorly than everyone else.  In fact, Plaintiff admits that Ms. Alcantar treated him in a manner unlike *anyone* else, including other Caucasian employees.  *See* Hermange Decl. ¶ 13; Opp. at 18 (testimony about sorting trash).

These facts point not to race discrimination, but instead to a toxic relationship between Ms. Alcantar and Plaintiff; a fact that has no bearing on whether Ms. Alcantar acted with racial animus.  *See Williams v. Raytheon Co.*, 220 F.3d 16, 19 (1st Cir. 2000) ("That [a manager] may have harbored hostility and treated [the plaintiff] unfairly standing alone is not probative of gender based animus."); *see also Zhang*, 2018 WL 1933588, at *12 (finding no pretext where plaintiff presented evidence that she was left out of meetings and that her manager did not give her the necessary help because the plaintiff had not shown that similarly-situated, non-Chinese employees were not treated in this way, or that the plaintiff was treated this way because of her ethnicity).

Ultimately, Plaintiff has not raised a triable issue of fact that Defendant's proffered reasons for terminating him are pretext for race discrimination.  For this reason, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's claim for discrimination under Title VII.

## V.   ORDER

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment as to his only claim.  The Court having dismissed Plaintiff's only claim, the Clerk is directed to close the case.


**IT IS SO ORDERED.**

Dated: March 18, 2019

_____
BETH LABSON FREEMAN
United States District Judge